# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HEATHER BENNEY,          )
                                  )
               Plaintiff,    )
                                  )
v.                                 )     Case No.: 17-2548-HLT-KGG
                                  )
MIDWEST HEALTH, INC., *et al.*,  )
                                  )
              Defendants. )
_____)

## MEMORANDUM & ORDER ON MOTION TO COMPEL

Now before the Court is Plaintiff's Motion to Compel Discovery. (Doc. 37.) Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part** and **DENIED in part** as more fully set forth below.

## FACTUAL BACKGROUND

In the present action, Plaintiff contends she was formerly employed as Director of Nursing at the Lexington Park facility from December 2012 through September 2015. She alleges she injured her arm, shoulder, and back while assisting a resident of the facility at work in April 2015. This resulting in the filing of a worker's compensation claim. She contends that the terms and conditions of her employment worsened as a result, ultimately leading to the termination of her employment.

In her federal court Complaint, Plaintiff generally alleges she was subject to disparate treatment, hostile work environment, denial of a reasonable accommodation for her disability, and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (*See* Doc. 1.) She also alleges workers' compensation retaliatory discharge. (*Id.*) Plaintiff contends that each of the Defendants[1] was her employer and that all engaged in the unlawful discrimination and retaliation. Defendants generally deny Plaintiff's allegations.

Plaintiff files the present motion requesting the Court enter an Order compelling Defendants to provide supplemental responses to certain of Plaintiff's discovery requests. (Doc. 37.) The parties conferred regarding the disputed discovery but were unable to resolve their disagreements.

## ANALYSIS

**I.** **Legal Standards.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

[1] Defendants are Lexington Park Nursing Operations, LLC (hereinafter "Lexington" or "Lexington Park"), Midwest Health, Inc. (hereinafter "Midwest"), and Midwest Health Management, Inc. (hereinafter "Management").

whether the burden or expense of the proposed discovery
outweighs its likely benefit.  Information within this
scope of discovery need not be admissible in evidence to
be discoverable.

As such, the requested information must be nonprivileged, relevant, and

proportional to the needs of the case to be discoverable.  ***Holick v. Burkhart***, No.

16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

## II.    Disputed Discovery Requests.

### A.    Interrogatory No. 4 to Defendants Lexington, Midwest, and Management.

This Interrogatory asks Defendants to identify and provide information

regarding employees who have brought claims or complaints of disability

discrimination and/or retaliation, and/or workers compensation retaliation against

them.  (Doc. 37-2, at 8-9; Doc. 37-3, at 7-8; Doc. 37- 4, at 8-9.)  Defendants object

that the Interrogatory is "compound in nature and thus requiring two entirely

different inquiries in the same interrogatory."  (*Id*.)  The Court does not agree with

Defendant.  The Interrogatory does not consist of "two entirely different inquiries

in the same interrogatory" – the inquiry is about claims or complaints of

discrimination and/or retaliation.  Although the inquiry encompasses both the ADA

and worker's compensation law, the Court finds that the concepts of discrimination

and retaliation provide a "common theme" for the inquiry.  Defendant's objection

is overruled.

Plaintiff complains that Defendants have improperly "answered the Interrogatory by providing an objection and then stating an answer." (Doc. 37, at 6.) Plaintiff is correct that "[a]nswering discovery requests 'subject to' objections is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all it he Federal Rules of Civil Procedure.'" *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 14-1136-JAR, 2015 WL 4044977, at *2 (D. Kan., Jan. 29, 2015) (citing *Sprint v. Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684, 2014 WL 545544 at *2 (D. Kan. Feb. 11, 2014)).

In this instance, though, the Court finds Defendants' response to be valid. Defendants object that the "question is without any applicable time period to be applied to the inquiry and thus becomes vague, ambiguous, and not calculated to lead to the discovery of admissible information." (Doc. 32-2, at 8-9; Doc. 32-3, at 8; Doc. 32-4, at 8-9.) As an initial matter, the Court notes that the "not reasonably calculated" standard is no longer the standard for discovery in federal courts. Rather, the standard was revised to the proportionality standard almost three years ago pursuant to the December 1, 2015, amendments to Fed.R.Civ.P. 26.

That stated, the Court finds a temporal restriction to Interrogatory No. 4 to be appropriate. The Interrogatory as worded, with no temporal limitation, would encompass any such claims or complaints that have ever been filed against Defendants. At some point, the information becomes so temporally remote as to

become irrelevant and not proportional to the needs of the case. The Court thus limits the inquiry to January 1, 2013, to the present as suggested by Defendants. *See e.g.*, **Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.**, 209 F.R.D. 208, 212-23 (D. Kan. May 30, 2002) (holding that limiting the temporal scope of discovery requests to a period of five years – three years prior to, and two years after, the discriminatory conduct – to be reasonable).

Defendants Lexington and Midwest indicate that they have had no such claims within the last five years. (Docs. 37-2, at 8, 37-3, at 8.) Defendant Management states that it "has not had any employees or operated as a business in the last five years and thus no claims pertaining to the same." (Doc. 37-4, at 9.) As such, Defendants' responses to Interrogatory No. 4 are sufficient.

## B.      Interrogatory No. 10 to Defendants Lexington and Midwest.

As a point of factual refence for this Interrogatory, Plaintiff states that

> [i]n August and September 2015, certain documentation had not been completed in one form or another for the nursing facility at which Plaintiff worked as the Director of Nursing. Thus, Plaintiff was assigned to work in the basement of the corporate office to complete the documentation. Defendant ultimately alleges that Plaintiff was terminated for not completing this documentation.

(Doc. 37, at 7.) Interrogatory No. 10 asks Defendants to list the "specific documentation" for "each occurrence" that Plaintiff did not complete "which

caused her to be required to work in the basement conference room." (Doc. 37-2, at 15; Doc. 37-3, at 14.)

Plaintiff argues that Defendants have not provided responsive answers to the Interrogatory. (Doc. 37, at 8.) The Court agrees. Defendants' responses speak more to general failures by Plaintiff rather than providing specific documentation for each occurrence of a failure. For instance, Defendant Lexington states that "significant issues with documentation" were noted, "problems with reporting and completing the documentation continued to emerge from July through the end of [Plaintiff's] employment," and that Plaintiff "would work what seemed to be full days but did not get reports completed . . . ." (Doc. 37-2, at 15-16.) The response of Defendant Midwest mirrors that of Defendant Lexington. (Doc. 37-3, at 15-16.)

In response to Plaintiff's motion, Defendants contend that, in their response to Plaintiff's "golden rule" letter, they explained to Plaintiff that they were "'attempting to find out whether exact records indicating what remained incomplete can be retracted from the system and is unaware of a specific list at this time.'" (Doc. 42, at 5.) Defendants continue that

> [t]his arises from the fact that the defendant keeps few paper records and most of the documents at issue fitting within their Quality Assurance program 'Riskwatch' – a program sold to the Responding Party by an outside vendor to meet its Centers for Medicare & Medicaid Services QAPI (Quality Assurance and Performance Improvement) mandate. As such, once plaintiff completed her handwritten portion of the documents,

6

> they were converted to an electronic format and the paper
> versions thereof destroyed. Thus the only documentation
> we are aware of would be the electronic files. Plaintiff
> raised the issue of restorative reports generated on paper,
> however this is not accurate and this is also an electronic
> file.

(*Id.*) Although Defendants have contacted their Riskwatch vendor "to determine

what, if anything, can be produced to show the records plaintiff wants,"

Defendants "simply [do] not have the records to produce or to list out." (*Id.*, at 6.)

Defendants are instructed to provide a supplemental response to Plaintiff's

Interrogatory No. 10 explaining this situation and their efforts to contact and work

with Riskwatch to respond to this discovery request. Such a supplemental

response shall be served within **thirty (30) days of the date of this Order**.

### C. Interrogatories 11 & 12 to Defendants Lexington and Midwest.

Interrogatory No. 11 asks for

> the specific procedures Plaintiff was to follow in
> completing the documentation which Defendant alleges
> led to her termination. Specifically, list and explain the
> nature of the documentation to be completed, the policies
> and procedures which were to be followed by Plaintiff in
> completing the documentation in the first place, the
> reason(s) for the completion of the documentation, and
> the procedures instituted in assisting Plaintiff in
> completing the documentation.

(Doc. 37-2, at 17; Doc. 37-3, at 16.) Defendants respond that

> Plaintiff was expected to complete the documentation
> which is required by the employer and the auditors in
> order to document situations that occur at the nursing

7

home facilities.  In addition plaintiff was specifically advised that she had to complete the reporting on Lexington Park for the period wherein she was the DON as that was deficient and lacking which would lead to a finding of substantially out of compliance for the facility.

(Doc. 37-2, at 17 and Doc. 37-3, at 17 (Bates page citations provided by Defendants omitted).)

Plaintiff complains that the response does not provide the requested information.  "Instead of listing the procedures, nature of documentation, and reasons for the completion of the documentation, Defendants essentially restate the question and provides no substantive answer."  (Doc. 37, at 9.)  Defendants indicate that in their response to Plaintiff's "golden rule" letter, they informed opposing counsel that "'to the extent that you are also seeking policies, manuals and training, please see also bates No. DEF 000039-000136, DEF 000744-0001054, DEF 001160-DEF 001238, DEF 001280-DEF 001347.'"  (Doc. 42, at 7.) Defendant continues that "[a]s to plaintiff's example of a policy that specifies an exact time to complete an exact report, responding [party] does not have such a policy."  (*Id.*)  Defendants are instructed to provide a supplemental response to Plaintiff's Interrogatory No. 11 that includes this clarification and explanation. Such a supplemental response shall be served **within thirty (30) days of the date of this Order**.

Interrogatory No. 12 relates to Interrogatories 10 and 11, seeking a list

of every "piece of documentation Plaintiff completed and each piece of documentation Plaintiff did not complete in August/September 2015, which she was required to complete during the time period she was required to only work on completing documentation." (Doc. 37-2, at 17; Doc. 37-3, at 17.) Plaintiff notes that Defendants "provided essentially the same answer as they provided to Interrogatory No. 11." (Doc. 37, at 11.) In response to Plaintiff's "golden rule" letter, Defendants stated that they were

> attempting to find out whether exact records indicating what remained incomplete can be retracted from the system and is unaware of a specific list at this time. The responding party does not typically keep paper records once the same are electronic and did not keep the recordings of plaintiff once transcribed. As such, it is attempting to determine another means by which it can go through and locate such records.

(Doc. 37-8, at 2, 4.) Plaintiff is also concerned that no transcriptions have been produced, that certain paper documentation may have been required to be maintained per state regulation, and this raises spoliation issues. (Doc. 37, at 12.)

Defendant responds that most of the documents at issue "fall within the Quality Assurance program 'Riskwatch'," which was sold to Defendants by an outside vendor to meet Medicare and Medicaid quality assurance mandates. (Doc. 42, at 8.) Defendants indicate they have "contacted the vendor of Riskwatch to determine what, if anything, can be produced to show the records plaintiff wants, but as of the present date, Responding Party simply does not have the records to

produce or to list out." (*Id*., at 9.)  Defendants therefore indicate that they are "looking to see what can be determined," but this is currently "unknown."  (*Id*., at 9-10.)  Defendants are instructed to provide a supplemental response to Plaintiff's Interrogatory No. 12 that includes this clarification and explanation as well as detailing their efforts to communicate and work with Riskwatch to respond to this discovery request.  Such a supplemental response shall be served **within thirty (30) days of the date of this Order**.  If and when this determination becomes "known," Defendants are instructed to further supplement this response.

###     E.     Interrogatory No. 6 to Defendant Midwest.

This Interrogatory asks Defendant Midwest to "list all policies that relate to discrimination and retaliation," including such information as when the policies were implemented, and relevant training provided.  (Doc. 37-3, at 11.)  Defendant responded by providing "[a] copy of the applicable policy manual for Lexington Park . . . ."  (*Id*.)  In her "golden rule" letter, Plaintiff indicated that she requested the information for Defendant Midwest, not Lexington.  (Doc. 37-5, at 8.)  Defendant responded by correspondence, stating that Plaintiff was not employed by Midwest.  (Doc. 37-8, at 3.)  Defendant continued that

> [a]s to specific training in the areas identified, that
> training would vary depending upon the employee, their
> job description and job duties, the date of hire, the date of
> employment, and the role out of training modules.  In
> other words it is not logical to provide it in a general

> context as denoted in your interrogatory because that
> does not exist at the company.

(*Id.*)

Plaintiff argues that she was an employee of Defendant Midwest. (Doc. 37, at 13.) Further, Plaintiff points out that Defendant did not object to the Interrogatory, thus waiving any relevance objection. The Court agrees. Plaintiff's motion is **GRANTED** as to Interrogatory No. 6. Defendant is directed to serve a supplemental response **within thirty (30) days of the date of this Order**.

### F. Request No. 1 to Defendants Lexington and Midwest.

Request No. 1 asks, in part, for

> '[e]ach document regarding Plaintiff previously made by
> Defendant or any other person employed by, contracted
> with, or having any relation with Defendant, regarding
> Plaintiff;' 'Each recording and/or transcript of recording
> of…persons employed by…Defendant, regarding the
> matters at issue in this lawsuit…;' and 'Each handwritten
> note, planner diary, calendar, and/or journal entry of
> Defendant and/or other person employed by, contracted
> with, or having any relation with Defendant, regarding
> Plaintiff.'

(Doc. 37, at 13 (citing Docs. 37-2, at 23, 37-3, at 23).) Defendants' responses stated that they object

> to the request to the extent that it calls for an invasion of
> patient confidentiality regarding certain individuals
> residing in the facility plaintiff worked and also to the
> extent that such request may be overly broad and
> unrefined, leading to copies amounts of random emails
> regarding work issues not related to the case and thus it is

> not calculated to lead to relevant information.  Given the
> question and the nature of claims at issue, Defendant has
> produced all documents and emails within its systems
> regarding the issues in this litigation and plaintiff's
> claims for discrimination and retaliation based upon a
> disability and workers compensation retaliation.[2]

(Doc. 37-2, at 23-24; 37-3, at 23-24.)

Defendants' confidentiality objection is unfounded and overruled.  Courts in

this District have routinely held that a document being "confidential" does not

equate to being privileged or otherwise shielded from discovery.

> It is well settled that confidentiality does not act as a bar
> to discovery and is not grounds to withhold documents or
> information from discovery.  'A concern for protecting
> confidentiality does not equate to privilege.'  While a
> confidentiality objection may be appropriate when a
> party seeks a protective order limiting the parties' use or
> disclosure of confidential information, it is generally not
> a valid objection to withholding discovery altogether.

*High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL

4008009, at \*1 (D. Kan. Sept. 9, 2011) (citations and footnotes omitted); *AKH v.*

*Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2017 WL 5465240, at

\*15 (D. Kan. Nov. 14, 2017).  Any such documents can be produced in accordance

with the Protective Order entered in this lawsuit.  Defendants are specifically

instructed to redact identifying information and Social Security numbers, if any,

---

[2]  Again, the Court notes that the "not reasonably calculated" standard was discarded by
federal courts almost three years ago in favor of the proportionality standard.

listed for the patients in any such documentation produced in accordance with the Protective Order.

Plaintiff argues that the information is relevant because it goes to the issue of pretext. (Doc. 37, at 14.) Defendants have indicated that Plaintiff's alleged failure to complete documentation was the reason for her termination. According to Plaintiff, "the reasons which led to the inability of Plaintiff to complete certain documentation are complex, and include many aspects of her employment, including delegation of duties, staffing concerns, and employee training." (*Id*.) Plaintiff contends the requested information is relevant to these issues.

Defendant objects, however, to the facial overbreadth of the Request, which it argues is "written in an [sic] nonsensical manner that it would require the Responding Party to engage in mental gymnastics to determine what information may or may not be remotely responsive, and as such which goes beyond what is permissible under the Federal Rules of Civil Procedure." (Doc. 42, at 21.) The Court agrees that the first and last subsections of the Request as quoted from Plaintiff's motion, *supra*, are facially over broad. Defendant has indicated that it has produced "documentation concerning the plaintiff's termination and/or issues regarding her performance and the failure thereof," and the Court finds this to be appropriate.

The Court finds that the second subsection listed in Plaintiff's motion – "each recording and/or transcript of recording of…persons employed by…Defendant, regarding the matters at issue in this lawsuit" – is not facially overbroad or disproportionate to the needs of this case. This subsection is narrowly limited to such documentation "regarding the matters at issue in this lawsuit." Defendant's objections to this portion of the Request are overruled. Defendant is directed to serve a supplemental response **within thirty (30) days of the date of this Order**.

**G.     Request No. 2 to Defendants Lexington and Midwest.**

This Request seeks "all correspondence between Plaintiff and Defendant, its employees, attorneys, supervisors and/or agents, including but not limited to email correspondence, text messages and instant messages during the Relevant Period." (Doc. 37-2, at 24; Doc. 37-3, at 24.) Defendants object based on patient confidentiality. Again, the Court overrules this objection in accordance with the Protective Order entered in this case. *High Point SARL*, 2011 WL 4008009, at *1. Defendants are instructed to redact identifying information and Social Security numbers, if any, listed for the patients in any such documentation produced in accordance with the Protective Order.

Defendants also object that the request is "overly broad and unrefined, leading to copies [sic] amounts of random emails regarding work issues not related

to the case and thus it is not calculated to lead to relevant information." (*Id*.)

Defendants indicate that they have "produced all documents and emails within its systems regarding the issues in this litigation and plaintiff's claims for discrimination and retaliation based upon a disability and workers compensation retaliation." (*Id*.)

Plaintiff again argues that it is inappropriate for Defendants to state objections but then respond subject to those objections without indicating what documents have been withheld. "Plaintiff cannot know what information was withheld and what information was produced from reviewing Defendants' response to the RFP." (Doc. 37, at 16.) Plaintiff contends that Defendant should not be allowed to limit the subject matter of the correspondence Plaintiff has requested, arguing that any and all correspondence involving her is relevant and discoverable. "For example, Defendants appear to be exploring an after-acquired evidence defense related to HIPPA. Thus, all communications of Plaintiff are relevant to this issue due to the medium in which they were sent or received." (*Id*.)

Defendant responds that Request No. 2 "is basically a variation of the prior request and still remains so broad that over a multi-year period it would encompass anything from a Christmas card to a sticky note with plaintiff's name on it; an email about a client's mismatched socks, to a phone message from a friend." (Doc. 42, at 22.) The Court agrees that these subjects – and many others – would

technically be encompassed by the broad verbiage of Plaintiff's Request No. 2.

The Court therefore limits Requests No. 2 to all correspondence between Plaintiff and Defendants (including their employees, attorneys, supervisors and/or agents) in any format relating to Plaintiff's employment, job performance, discipline, complaints or claims of disability discrimination and retaliation, and/or workers' compensation issues. Defendant is directed to serve a supplemental response **within thirty (30) days of the date of this Order**.

### H. Request No. 35 to Defendants Lexington and Midwest.

This Request seeks "all documents and correspondence related to the annual state survey for Lexington Park, include the annual state survey themselves, from January 2012 to the present." (Doc. 37-2, at 33-34; Doc. 37-3, at 33-34.) Defendants responded that "all such documentation has been produced" and that they would supplement their responses "[i]f additional items become known . . . ." (*Id*.)

Plaintiff complains that Defendants have produced only the 2013 and 2017 surveys. (Doc. 37, at 16.) Plaintiff is also concerned that no correspondence regarding the surveys exists and/or has been produced. (*Id*.)

Defendants contend that there is "not much" correspondence related to the annual state survey because the State Agency "simply shows up and performs" the surveys. (Doc. 42.) Defendants contend that "contrary to the claims of the

plaintiff, there are not a lot of documentation with the surveyors pertaining to this other than the Plans for Correction." (*Id.*)

The Court finds Defendants' response to be concerning. There is a significant difference between "not much" or "not a lot" of documentation and **<u>no</u>** documentation. Defendants are instructed to produce all documentation, regardless of the amount, forthwith. If there is **<u>no</u>** such documentation, Defendants are instructed to indicate the same in the supplemental response. Further, Plaintiff's request encompasses "correspondence between the employees of Defendants, not only correspondence between Defendants and the state surveyors." (Doc. 44, at 14.) This information must also be produced.

Defendants have also indicated that their failure to produce the surveys for 2014 and 2015 was inadvertent and the documents are being produced along with the Plans of Correction from that time span. (*Id.*) Defendants make no mention of the 2016 survey, which was also requested by Plaintiff. Defendants are instructed to produce this information as well. This portion of Plaintiff's motion is **GRANTED**. Defendant is directed to serve a supplemental response **within thirty (30) days of the date of this Order**.

## I.     Request No. 46 to Defendants Lexington and Midwest.

Request No. 46 asks for "each and every job positing for the Lexington Park facility for the Relevant Period." (Doc. 37-2, at 36; Doc. 37-3, at 36.) Defendants

respond that "[t]he job posting for plaintiff's position has been produced." (*Id.*) In the response to Plaintiff's golden rule letter, Defendants stated that "[g]iven the nature of the claims at issue, there is no relevance to the job posting of any position other than plaintiffs."

Plaintiff argues that because Defendants did not raise the relevance objection in response to Request No. 46, the objection has been waived. The Court agrees. It is "well settled that when a party fails to assert an objection in its initial response to the discovery request and raises it for the first time in response to a motion to compel, the objection is deemed waived." *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 621 (D.Kan. 2005). This portion of Plaintiff's motion is **GRANTED**. Defendants shall serve a supplemental response **within thirty (30) days of the date of this Order**.

## J.      Request No. 47 to Defendants Lexington and Midwest.

This Request asks for "all handwritten documentation and/or reports created by, or utilized by, Plaintiff in August or September 2015, to complete paperwork required for the survey." (Doc. 37-2, at 36; Doc. 37-3, at 36-37.) In response, Defendants state that Plaintiff is the only one capable of responding to this Request because they would be required to "step into the shoes of plaintiff and presuppose what was used by plaintiff to work on reports that were still not completed as of the date of her termination." (*Id.*)

Plaintiff argues that Defendants are "well aware of at least some of the documentation used by Plaintiff" because

> 1) Plaintiff provided Defendants with a bag full of handwritten documentation and medical records she used and created, which is mentioned in multiple email communications produced by Defendants; and 2) when Plaintiff was terminated, handwritten documentation was left in the room Plaintiff was working in.

(Doc. 37, at 18.)  She also contends that she turned in to Defendants the handwritten documentation she created "to complete paperwork required for the survey," thus Defendants "are in sole possession of this documentation."  (*Id.*)

Defendants argue that because Plaintiff, not Defendants, utilized the documentation, it is not required to attempt to determine "what information may or may not be remotely responsive" to this Request.  (Doc. 42, at 26.)  While the Court sympathizes with Defendant's position, it finds that Plaintiff has adequately specified the documentation to which she is referring.

That stated, Defendants have indicated that their operations are paperless. As such, "to the extent that she turned over any handwritten notes, the Responding Party is paperless and it did not keep any of the handwritten documents or reports prepared by plaintiff and turned over once the same had been entered into the computer . . . ." (Doc. 42, at 27.)  Defendants thus indicate that they are "unable to separately identify such documentation."  (*Id.*)

Plaintiff replies by that "[i]f Defendants destroyed said documents, Defendants have not provided any specific information as to when they were destroyed." (Doc. 44, at 16.) She asks the Court to order Defendants "to conduct a diligent search for these documents and produce those in their possession, custody, or control." (*Id.*) The Court, which also operates in a paperless manner, finds Defendant's explanation of their paperless operations to be appropriate. "Defendants cannot be compelled to produce documents they do not possess or that do not exist." ***Hall v. Life Care Cntrs. of Am., Inc.***, No. 16-2729, 2018 WL 1992333, at *5 (D. Kan. April 27, 2018).

Plaintiff replies, however, by requesting that Defendants "be ordered to conduct a diligent search for these documents and produce those in their possession, custody, or control." (Doc. 44, at 16.) The Court notes that Defendants' response does not indicate whether such a search was conducted or if they are simply relying on the fact that paper documentation is routinely destroyed. Defendants are thus instructed to supplement their response to specifically indicate whether they have conducted a search for any paper documentation. To the extent no such search has occurred, Defendants are instructed to do so and produce any responsive documentation discovered. A supplemental response shall be served **within thirty (30) days of the date of this Order**.

### K. Request No. 48 to Defendants Lexington and Midwest.

Request No. 48 asks for "all documentation and/or reports completed by Plaintiff in August and September 2015 which was [sic] required for the survey." (Doc. 37-2, at 37; Doc. 37-3, at 36.) Defendants responded that "[a]ll such documentation has been produced. If additional items become known, the defendant will supplement accordingly." (*Id*.)

Plaintiff argues that Defendants' response is "troubling, as not a single handwritten document created by Plaintiff has been produced in this lawsuit, despite Plaintiff only being able to handwrite many of the requested documents." (Doc. 37.) Plaintiff continues that "not a single document or report created electronically by Plaintiff has been produced." (*Id*.) Plaintiff also notes that Defendants did not object to this Request. (*Id*.)

Defendants again indicate the paperless nature of their operations, stating that all paper records from Plaintiff "were all converted to electronic format either by plaintiff herself, or when she could not type, then the handwritten notes were converted to electronic format and destroyed." (Doc. 42, at 28.) Defendants explain that such documents are found in Riskwatch, the quality assurance program Defendants purchased from an outside vendor to meet its Centers for Medicare & Medicaid Services quality assurance mandate. (*Id*.) Defendants indicate they have "not been able to isolate and produce such records as it cannot tell the date that the information was put in by plaintiff. The Responding Party has

contacted its vendor to see if such information can be produced and if so, will supplement accordingly." (*Id*.)

The Court reiterates that "Defendants cannot be compelled to produce documents they do not possess or that do not exist." ***Hall***, 2018 WL 1992333, at *5. Defendants have indicated they are working with the third-party vendor to attempt to identify and compile the information. Defendants are instructed to provide a supplemental response detailing these efforts and the results thereof.

Again, however, Defendants' response does not indicate whether such a search was conducted or if they are simply relying on the fact that paper documentation is routinely destroyed. Defendants are thus instructed to supplement their response to specifically indicate whether they have conducted a search for any paper documentation. To the extent no such search has occurred, Defendants are instructed to do so and produce any responsive documentation discovered. A supplemental response shall be served **within thirty (30) days of the date of this Order**.

## L.     Request No. 49 to Defendants Lexington and Midwest.

Request No. 49 asks for the "documentation and/or reports for the survey which was not completed by Plaintiff upon her termination and was later completed by another individual." (Doc. 37-2, at 37; Doc. 37-3, at 37.) Defendants respond, without objection, that "all such documentation has been

produced.  If additional items become known, the defendant will supplement accordingly." (*Id*.)

Plaintiff states that the response is "inaccurate" because "no such items have been produced." (Doc. 37, at 20.)  Defendants indicate they did not know that Plaintiff was seeking the relevant Riskwatch reports (Plaintiff finds Defendants' ignorance to be feigned). (*Id*.; *see also* Doc. 42, at 27.)  Regardless, Defendants state that they are working with Riskwatch in "attempting to find out whether exact records indicating what was completed by plaintiff and can be retracted from the system and is unaware of a specific list at this time." (Doc. 42, at 27-28.) Defendants are instructed to provide a supplemental response detailing their efforts with Riskwatch to comply with this Request and the results thereof.

Also, Defendants' response does not indicate whether a search for paper documentation was conducted or if they are simply relying on the fact that paper documentation is routinely destroyed.  Defendants are thus instructed to supplement their response to specifically indicate whether they have conducted a search for any paper documentation.  To the extent no such search has occurred, Defendants are instructed to do so and produce any responsive documentation discovered.  A supplemental response shall be served **within thirty (30) days of the date of this Order**.

    **M.**    **Request No. 54 to Defendants Lexington and Midwest.**

This Request seeks the documentation reflecting the reasons for the end of the employment of Bill Patterson, Plaintiff's supervisor. (Doc. 37-2, at 39; Doc. 37-3, at 39.) Defendants object to the "extent it seeks to obtain confidential and personal information about an employee… ." (*Id.*) Plaintiff argues that "any concerns regarding confidentiality" are "cured" by the Protective Order in this case. The Court agrees and that objection is overruled. ***High Point SARL***, 2011 WL 4008009, at *1. Defendants are instructed redact any information relating to Mr. Patterson's medical history, benefits, payroll, and/or his Social Security number.

Defendants' response to the Request continues that "the performance reviews and disciplinary records of Mr. Patterson during his employment with Lexington Park will be produced as a supplement (such records were currently offsite and are being recovered for production)." (Doc. 37-2, at 39; Doc. 37-3, at 39.) The Court finds this sufficient. Defendants are instructed to provide the documents to Plaintiff **within thirty (30) days of the date of this Order**, if they have not already been provided.

### N.      Request No. 57 to Defendants Lexington and Midwest.

This Request seeks "all weekly reports completed by Plaintiff" during her employment. (Doc. 37-2, at 40; Doc. 37-3, at 39.) Defendants responded by objecting that "this request as written . . . is not clear what reports are referenced,

and what information (whether protected under HIPPA or otherwise) might be contained in such documentation or reports." (*Id*.) Defendants continue that they are of the opinion that they have already produced this information "[g]iven the nature of the question in relation to the claims and issues in the litigation . . . ." (*Id*.)

Following Plaintiff's "golden rule" letter, Defendants indicate that they are "attempting to locate the weekly reports that plaintiff is referencing and determine if they may be produced or are objectionable for HIPPA and QAPI." (Doc. 37-8, at 7.) In response to Plaintiff's motion, Defendants state that "[o]nce the documents are located they will be produced in accordance with what is stated in the Golden Rule letter." (Doc. 42, at 30.)

Plaintiff replies that given her prior job as Director of Nursing, "it is likely that many documents relevant to this case contain patient information," thus necessitating the Protective Order in this case. (Doc. 44, at 18.) Even so, Plaintiff complains that "Defendants continue to use privacy concerns as a method to delay discovery" and that they "have not provided any analysis or reasoning as to why a Protective Order would not satisfy any [of their] privacy concerns. . . ." (*Id*.) The Court agrees. Defendants are instructed to provide a supplemental response to Request No. 57 **within thirty (30) days of the date of this Order**.

**O.  Request No. 36 to Defendant Midwest.**

Request No. 36 asks for "each annual state survey for all facilities located in the state of Kansas from January 2012 to the present." (Doc. 37-3, at 34). Defendant Midwest responded that it "does not operate any facilities but is simply under contract to provide services to other entities. As such, it cannot provide any documentation relevant to this request." (*Id.*). Plaintiff's "golden rule" letter explained that explained that "the Request, as written, does not seek the state surveys for the facilities the Defendant *operates*, but rather, the surveys in the possession, custody, or control of the Defendant. (Doc. 37, at 22, (citing Doc. 37-5, at 28).)

Defendant Midwest argues that Plaintiff's clarifications "make the request so overly broad and irrelevant that it becomes objectionable in that form." (Doc. 42, at 37.) Defendant continues that it

> contracts with 25 Assisted Living facilities, 8 Independent Living facilities, 8 Rehabilitation facilities, and 8 Memory Care facilities, in the State of Kansas, all of which have some degree of annual surveys from the State. Each facility is different with different levels of income and care serviced, and different staffing issues unique to each facility. There is no delineation to which type of facilities this is sought from, or how that will assist in evaluating a State survey, which may be conducted by different surveyors.

(*Id*.)  The Court agrees that Plaintiff's clarification is facially overbroad and encompasses information relating to facilities that are entirely irrelevant to these proceedings.[3]  Plaintiff's motion is **DENIED** as to Request No. 36.

**P.    Request Nos. 43 and 44 to Defendant Midwest.**

This Request seeks "all disciplinary action and performance reviews of each supervisor of Plaintiff."  (Doc. 37-3, at 35.)  Defendant responded that "[t]his will be supplemented as such documentation is offsite and not readily accessible for defendant," but it "is in the process of being retrieved."  (*Id*. at p. 36).  Defendant did not discuss this Request in response to Plaintiff's motion.  (*See generally* Doc. 42.)  In her reply, Plaintiff states that Defendant still had not provided the information and asked the Court to order Defendant Midwest to fully respond to Request No. 43.

Request No. 44 seeks the job descriptions of Plaintiff's supervisors. (Doc. 37-3, at 35.)  Although Defendant Midwest has agreed to produce "the documents regarding he supervisors' job positions" (Doc. 37-8, at 9), it did not discuss this

---

[3]  Plaintiff argues Defendant waived the overbreadth objection because it was not contained in the original discovery response.  The Court finds that Defendant responded to Plaintiff's discovery request as the request was worded.  The objection did not become applicable until Plaintiff clarified Request No. 36 in counsel's "golden rule" letter.  Regardless, the Court finds Request No. 36 to be facially over broad and encompassing information that is not proportional to the needs of the case.

Request in response to Plaintiff's motion.  (*See generally* Doc. 42.)  Further, as of the date of Plaintiff's reply, the documents had not been produced.

The Court is concerned with Defendant's lack of explanation as to the continued delay in producing this information and **GRANTS** Plaintiff's motion as to Requests Nos. 43 and 44.  This information shall be provided to Plaintiff **within thirty (30) days of the date of this Order**.

### Q.    Request No. 55 to Defendant Midwest.

Request No. 55 asks for "all documentation regarding or demonstrating any company policy violation of any Director of Nursing at any facility located in the state of Kansas for the Relevant Period."  (Doc. 37-3, at 39). Defendant responded that "[a]ll such documentation has been produced.  If additional items become known, the defendant will supplement accordingly."  (*Id*.).

Plaintiff contends that upon review of the documents produced by Defendant Midwest, she was unable to locate any documentation responsive to this Request. (Doc. 37, at 24.)  Plaintiff requested in her "golden rule" letter to Defendant that it identify the Bates numbers of the responsive documents.  (Doc. 37-5, at 30.) Plaintiff states that she received no response from Defendant.  (Doc. 37, at 24.)

In response to Plaintiff's motion, Defendant Midwest states that it

> does not operate any actual facilities in the State of Kansas . . . and the personnel files of the Directors of Nursing for each facility would belong to the Operator. However, as part of this litigation the Responding Party

> has attempted to provide the documentation with regard
> plaintiff and the same is denoted in above in Midwest
> Health, Inc., Interrogatory 10 for narrative with
> documents noted and Interrogatory No. 11 for policies.

(Doc. 42, at 41-42.)  Plaintiff replies that "Defendant's argument regarding this Request is inarticulate to the point that Plaintiff does not know what Defendant's current position is on the issue."  (Doc. 44, at 20.)

The Court agrees that Defendant's "clarification" is poorly worded and **GRANTS** this portion of Plaintiff's motion.  Defendant's initial discovery response indicates that "documentation has been produced" but Defendant's response to Plaintiff's motion refers only to Defendant's responses to Interrogatories Nos. 10 and 11.  Defendant Midwest is ordered to submit a supplemental response to Request No. 55 **within thirty (30) days of the date of this Order** clarifying its response.  To the extent information has been produced, Defendant is ordered to include corresponding Bates page numbers in the supplemental response.  If there are no such responsive documents, Defendant is instructed to state the same and explain why it initially referred to previously produced information that apparently does not exist.

### R.     Request No. 56 to Defendant Midwest.

Request No. 56 seeks "all documentation reflecting any job vacancies at any facility located in the state of Kansas [from October 2012 through the present]." (Doc. 37-3, at 39.)  Defendant responded that it "does not operate any facilities but

is simply under contract to provide services to other entities. As such, it cannot provide any documentation relevant to this request." (*Id.*)

In her "golden rule" correspondence, Plaintiff explained that "the Request, as written, does not seek the job vacancies for the facilities the Defendant operates, but rather, the job vacancy documentation in the possession, custody, or control of the Defendant." (Doc. 37, at 25 (citing Doc. 37-5, at 30.) Plaintiff contends it is her "understanding that Defendant Midwest 'manages' multiple facilities in the state of Kansas, and thus would be in possession, custody, or control of multiple surveys." (*Id.*)

In response to Plaintiff's motion, Defendant Midwest explains that it "does not operate own or operate any facilities located in Kansas or any other State." (Doc. 42, at 42.) As such, Defendant is of the position that "when asking the question, 'please produce all documentation reflecting job vacancies for all facilities located in the state of Kansas from January 2012 to the present' the answer is simply none as there are none." (*Id.*)

Defendant continues that Plaintiff's clarification that it "should produce all job vacancies for any facilities it contracts with in the state of Kansas" is overly broad and encompasses irrelevant information. (*Id.*) Plaintiff replies that Defendant waived these objections by not including them in its original response. (Doc. 44, at 21.) The Court finds, however, that Defendant responded to Plaintiff's

discovery request as that request was worded.  The objection did not become

applicable until Plaintiff clarified Request No. 56 in counsel's "golden rule" letter.

That stated, Plaintiff explains that the information is necessary "to compare

the staffing issues at other facilities to the staffing issues experienced by Plaintiff at

the Lexington Park facility."  (Doc. 44, at 21.)  Plaintiff continues that

> [t]his information relates directly to Plaintiff's ability to
> demonstrate that Defendant's purported reason for
> termination of Plaintiff is pretextual.  While Defendant
> may claim that other facilities did not have issues
> completing the documentation at issue, the information
> sought in RFP 56 may likely demonstrate that they were
> not experiencing the same staffing issues as the facility in
> which Plaintiff worked.

(*Id*.)  The Court finds Plaintiff's explanation of the relevance of this information to

be persuasive.  Defendant Midwest is ordered to provide Plaintiff with a

supplemental response to Request No. 56 **within thirty (30) days of the date of

this Order**.


**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc.

37) is **GRANTED in part** and **DENIED in part** as more fully set forth above.  All

supplemental responses, including responsive documents, shall be served by

Defendant **within thirty (30) days** of the date of this Order.

IT IS SO ORDERED.

Dated this 19th day of November, 2018, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE