# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HEATHER BENNEY,          )
                                       )
                 Plaintiff,    )
                                       )
v.                                )         Case No.: 17-2548-HLT-KGG
                                       )
MIDWEST HEALTH, INC., *et al.*,   )
                                       )
               Defendants. )
_____)

## MEMORANDUM & ORDER ON MOTION TO COMPEL

Now before the Court is Plaintiff's Motion to Compel Discovery. (Doc. 104.) Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part** and **DENIED in part** as more fully set forth below.

## FACTUAL BACKGROUND

In the present action, Plaintiff contends she was formerly employed as Director of Nursing at the Lexington Park facility from December 2012 through September 2015. She alleges she injured her arm, shoulder, and back while assisting a resident of the facility at work in April 2015. This resulting in the filing of a worker's compensation claim. She contends that the terms and conditions of her employment worsened as a result, ultimately leading to the termination of her employment.

In her federal court Complaint, Plaintiff generally alleges she was subject to disparate treatment, hostile work environment, denial of a reasonable accommodation for her disability, and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (*See* Doc. 1.) She also alleges workers' compensation retaliatory discharge. (*Id*.) Plaintiff contends that each of the Defendants[1] was her employer and that all engaged in the unlawful discrimination and retaliation. Defendants generally deny Plaintiff's allegations.

Plaintiff files the present motion requesting the Court enter an Order compelling Defendant Lexington's full response to Plaintiff's Interrogatories 18, and 21; Defendant Midwest's full response to Interrogatories 15, 18, 20, 21, 22, 23, 24, and 25; Defendant Lexington's full response to Request for Production 65, 66, 67, 68, 73, 74, 77, 78, 79, 85, 86, 87, and 88; and Defendant Midwest's full response to Request for Production 68, 73, 81, 82, 86, 87, 88, 89, 90, 95, 96, 98, 104, 105, and 106. (Doc. 104.) Based on Plaintiff's representations, the Court is satisfied that the parties adequately conferred regarding the disputed discovery, although they were unable to resolve their disagreements.

## ANALYSIS

## I.     Legal Standards.

---

[1] Defendants are Lexington Park Nursing Operations, LLC (hereinafter "Lexington" or "Lexington Park"), Midwest Health, Inc. (hereinafter "Midwest"), and Midwest Health Management, Inc. (hereinafter "Management").

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and

proportional to the needs of the case to be discoverable.  *Holick v. Burkhart*, No.

16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

## II.     Disputed Discovery Requests.

### A.     Interrogatory No. 15 to Midwest.

This Interrogatory asks if Plaintiff was "told there were concerns regarding

her sharing and/or showing emails and/or text messages on or before September

17, 2015?"  (Doc. 104-3, at 1-2.)  Defendant Midwest was instructed to "describe

each reason" Plaintiff was so informed.  (*Id*.)  Defendant responded that there were

"two basic concerns" regarding the Interrogatory.

> The first was that plaintiff did not need to share all
> matters pertaining to her employment and work in email
> with multiple individuals when she only needed to
> address things to her supervisor and second, at that time

she had a one hour per day typing restriction and was
spending her time typing rather lengthy emails instead of
completing the reports that she was requested to focus
her energies on. However, while communications may
have been discussed with Ms. Benney at various times
prior to September 17, 2015, there was not any
disciplinary or corrective action taken by the [D]efendant
at any time prior to September 17, 2015 pertaining to her
emails.

(*Id*., at 2.)

Plaintiff complains that this answer is nonresponsive. (Doc. 104, at 7.) As Plaintiff points out, Defendant Midwest's response indicates that communications "may" have happened. (*Id*.) Defendant argues that the answer is "responsive … to the best of Midwest's abilities." (Doc. 114, at 2.) The Court agrees with Plaintiff, however, that the answer is not fully responsive. As Plaintiff states, "either the conversations happened to the Defendant's knowledge, or they did not." (Doc. 104, at 7.) This portion of Plaintiff's motion is **GRANTED** and Defendant Midwest is instructed to respond to this Interrogatory in a manner that removes such qualifying language.

## B.     Interrogatory No. 18 to Midwest.

Interrogatory No. 18 asks whether Defendant Midwest employed "regional nurses" in 2014 and 2015. (Doc. 104-3, at 3.) Defendant was then asked, if the answer was "no," to "identify the entity which you contended employed the regional nurses who oversaw Defendant's facilities." (*Id*.) Defendant responded

that "Regional Nurses have worked for Midwest Health Consulting, Inc. which provides services to Midwest Health." Plaintiff again complains that this answer is nonresponsive. As Plaintiff indicates, Interrogatory No. 18 first seeks a yes or no answer to a specific question. (Doc. 104, at 7.)

Plaintiff contends that "[f]rom Defendant's stated answer it is unclear whether the Defendant asserts that the regional nurses were employed by Midwest Health Consulting Inc. in 2014 and 2015." (*Id*.) "Rather, the answer vaguely states that the Regional Nurses have worked for that entity, but does not define the time period." (*Id*.) Defendant Midwest argues that the answer "is responsive to the question as written" because it "directly identifies the employer for the Regional Nurses in the in time period specified by the Plaintiff." (Doc. 114, at 2.) The Court **GRANTS in part** Plaintiff's motion as to Interrogatory No. 18 and instructs Defendant to supplement its response to include a "yes or no" answer to the first portion of Plaintiff's inquiry.

### C. Interrogatory No. 20 to Midwest.

Interrogatory No. 20 asks Defendant Midwest to "[d]escribe each step Defendant has taken to assess Marie Vogel's cell phone privacy settings and each step Defendant has taken to install safety precautions on Marie Vogel's cell phones, and state the date of each action taken." (Doc. 104-3, at 3-4.) Defendant responded that its "IT department works with employees to set up the phones with

secured access to an internal network email which is continually updated at the network level as needed. This included setting a passcode when originally presented to IT for Ms. Vogel to enter in information." (*Id.*)

Plaintiff again complains that Defendant's Answer is not fully responsive.

> First, the Interrogatory asks for the date of each action taken. No dates have been provided. Second, the Answer refers to a passcode, but does not state what the passcode is to, or the date the passcode was set up. Third, the Answer does not explain what steps are taken to give secure access to the internal network email, and the Answer does not explain whether, or when, this was done with Ms. Vogel. Fourth, the Answer does not explain what continued updates are done at the network level.

(Doc. 104, at 8.) The Court agrees with Plaintiff. Defendant's response describes steps it generally takes regarding employee cell phones. It does not relate specifically to steps taken regarding Plaintiff nor does it provide specific dates, as requested. Plaintiff's motion is **GRANTED** as to Interrogatory No. 20 and Defendant Midwest is instructed to provide a complete response.

### D. Interrogatories 21 to Midwest and 18 to Lexington.

These Interrogatories ask Defendants Midwest and Lexington to "[i]dentify each rule, regulation, policy, or procedure Defendant contends Plaintiff failed to follow or adhere to while working for Defendant, and describe the reason(s) Plaintiff failed to follow them." (Doc. 104-3, at 4; Doc. 104-2, at 2.) Defendants responded, "[t]his interrogatory is similar to and addresses the issues that the Court

appears to have dealt with as part of the Motion to Compel, for interrogatory No 11 which is to be supplemented as required by the Court order by December 19, 2018." (Doc. 104-3, at 4-5; Doc. 104-2, at 3.) Defendants also referred Plaintiff to a lengthy list of documents. (*Id*.) Defendants concluded their responses by stating that "[a]s to the reasons plaintiff failed to follow such rules, regulations, policies and procedures, only plaintiff can describe the reasons why that is." (*Id*.)

Plaintiff contends that Interrogatories do "not ask for Defendants' opinion as to why Plaintiff believes she failed to follow the policies." (Doc. 104, at 9.) Instead, according to Plaintiff, the Interrogatories are "directed towards to Defendant [sic], clearly asking Defendants what the reasons were underlying the policy violations." (*Id*.)

As worded, the Interrogatories clearly ask Defendants to "describe the reason(s) Plaintiff failed to follow" rules and policies while working for Defendant. The Court finds this portion of Plaintiff's Interrogatory to be improper. As Defendants argue, the interrogatory, as written, "clearly asks for the *reasons the Plaintiff failed to follow* such rules, regulations, policies and procedures." (Doc. 114, at 4.) The Court agrees. Plaintiff, rather, than Defendants, would be the person to indicate why she did not follow a given rule or policy. Defendants are, however, instructed to enumerate each rule, regulation, policy, or procedure they contend Plaintiff failed to follow or adhere to while working for Defendant. As

such, this portion of Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

      **E.     Interrogatory 22 to Midwest.**

Interrogatory No. 22 asks Defendant Midwest to "[i]dentify each employee who has ever taken documentation containing patient names off of Defendant's premises and state the reason(s) the employee did this." (Doc. 104-3, at 5.) Defendant responds that

> [t]his cannot be answered as the question is posed, as it contains no time frame as a reference for answering the same, does not define premises or what is being sought as a premises, and is not limited to any particular aspect of the companies [sic] affairs of which Midwest Health is involved in many different contract relationships with many different entities over multiple states. For example, certain employees of this Defendant would go to various nursing homes or other businesses which contracted with Midwest Health, Inc., and would view records at the location of the business that contracted with Midwest Health, Inc. If we are considering the premises to be the Midwest Health corporate office building, then this would be considered offsite from the main building of Midwest Health, Inc. In addition, most medical records were electronic at the time plaintiff was terminated, and thus individual may be considered to be viewing documentation offsite if they viewed this record on a secured and authorized electronic platform from any location other than in the Midwest Health Building, which again would include the building of the contracting party. Moreover, during the course of this [D]efendant's existence, medical records were not always electronic and thus the entire platform under which medical records existed has changed and attempting to determine that at this point is not necessarily practical,

> possible or relevant to this litigation. Simply put, without further refinement, the question cannot be answered with any degree of accuracy.

(Doc. 104-3, at 5-6.)

In her letter of April 5, 2019, Plaintiff agreed to limit the scope of this Interrogatory as follows: "For the years 2014-2015, please identify each employee who has ever taken documentation containing patient names outside of any building owned by any Defendant, and state the reason(s) the employee did this." (Doc. 104-6.) Defendant still refused to respond to the interrogatory, arguing that it remains facially overbroad because it "still encompasses every building owned by any of the [D]efendants." (Doc. 114, at 5.) According to Defendant Midwest, the task of identifying "every employee who has ever taken documentation containing patient names outside of these buildings is so overly broad that it renders the request impossible to answer." (*Id.*) Defendant continues that "[i]n the regular course of business it is foreseeable, and practical, that employees have taken such documentation outside of the many buildings owned by the Defendants" and "[t]here is absolutely no way for the Defendants to identify every [such] instance." (*Id.*)

Plaintiff replies that Defendant's response "demonstrates its refusal to make a good faith attempt to respond." (Doc. 119, at 4.) For instance, Plaintiff complains that Defendant has failed to identify what "'practical' reasons there are

for documentation to be taken out of the buildings, and which employee(s) would be authorized to take the documentation out of the buildings." (*Id*.) The Court notes, however, that the interrogatory did not ask for such specifics to be provided.

The Court agrees with Defendant and finds that Interrogatory No. 22, as worded, is ambiguous, overly broad, and not proportionate to the needs of this case, even with the limitations proposed in Plaintiff's golden rule letter. This portion of Plaintiff's motion is **DENIED**.

### F. Interrogatory No. 23 to Midwest.

Interrogatory No. 23 asks Defendant Midwest to "[s]tate the reasons for assigning an employee to sit with Plaintiff while she was working in the corporate conference room in September 2015 and describe the specific actions, if any, the employees took to assist Plaintiff while assigned sit with her." (Doc. 104-3, at 6.) Defendant responded that

> In part it was to ensure that plaintiff was working toward completion of the outstanding reports and to assist the plaintiff (as practical under the circumstances) in completing the reports. In addition, it ensured that plaintiff did not violate the work restrictions, got to take her breaks as needed, and that there was someone present if plaintiff needed anything.

(*Id*.)

Plaintiff contends that the response "provides half of the information sought by the Interrogatory, but does not answer the portion seeking a description of 'the

specific actions, if any, the employees took to assist Plaintiff while assigned sit with her.'" (Doc. 104, at 12.) Defendant argues that assigning a person "to assist the plaintiff (as practical under the circumstances) in completing reports" as stated in the response "describes the specific action" taken. (Doc. 114, at 6.)

The Court does not agree with Defendant. Rather, the Court finds that Defendant's response provides only the most general – rather than "specific" – description of the actions taken by this employee to assist Plaintiff. Defendant is instructed to provide a supplemental response curing this deficiency. This portion of Plaintiff's motion is **GRANTED**.

### G.     Interrogatory 24 to Midwest.

Interrogatory No. 24 asks Defendant Midwest to "[i]dentify each DON and facility Administrator from any facility who was terminated during the Relevant Period and state the reason(s) for termination." (Doc. 104-3, at 6.) Defendant objected that "a reasonable time period is only from 3 years prior to [P]laintiff's termination to 2 years after her termination." (*Id.* (citation omitted).) Defendant also objected that each of its facilities "is different with different levels of income and care serviced, and different staffing issues unique to each facility," and "may address discipline for its employees differently," making such terminations irrelevant to Plaintiff's claims. (*Id.*) Defendant contends that "[a]s it is written, this interrogatory is facially invalid and the prospective relevance of such materials

is not proportional to the needs of the case." (*Id*.) That stated, Defendant provided a list of administrators and Directors of Nursing who "have been terminated from the skilled nursing side." (*Id*.)

As an initial matter, Plaintiff contends that Defendant's objections were waived "as they were not stated within the time period Defendant had to respond to discovery." (Doc. 104, at 13.) Plaintiff contends that Defendants' discovery responses were due to Plaintiff on November 26, 2018, but were not served until a later date and that the extension was not requested until after this deadline had passed. (*Id*.) Defendants respond that they were given an extension of December 7, 2018, to respond to the discovery, and therefore did so in a timely manner. (Doc. 114, at 6.)

The Court notes that Defendants explained in their initial motion for an extension that the reason the request was not filed before the deadline had expired was because defense "counsel's office was closed on November 26, 2018 due to weather." (Doc. 72, at 1.) The Court subsequently found this initial request for an extension to be moot because Defendants filed an additional request for an extension, which the Court granted, and therefore the Court did not address the substance of the initial motion or the mentioned weather delay. (*See* Docs. 76 and 77.) That stated, the Court now finds that Defendants had an adequate explanation for the one-day delay in filing its initial request for an extension. As such, the

Court **overrules** Plaintiff's contention that Defendants' objections were waived as untimely.[2]

Plaintiff also argues that Defendant Midwest's response is improper because it is provided subject to an objection. (Doc. 104, at 13.) As this Court has previously held, "[a]nswering discovery requests 'subject to' objections is 'manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." ***Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.***, No. 14-1136-JAR, 2015 WL 4044977, at *2 (D. Kan., Jan. 29, 2015) (citing ***Sprint v. Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC***, No. 11-2684, 2014 WL 545544 at *2 (D. Kan. Feb. 11, 2014)).

Defendant responds that it "did not respond to Interrogatory 24 subject to an objection." (Doc. 114, at 6.) Rather, according to Defendant, it

> raised the objections to Interrogatory 24 within the Response, noting that a 'list of Admins and DONS that have been terminated from the skilled nursing side has been provided as part of the documents in the case' as supportive of the Defendant's objections that Interrogatory No. 24 is requesting discovery that the prospective relevance of such materials is not proportional to the needs of the case. The previously produced list of Admins and DON's that have been terminated from the skilled nursing side is not offered as a Response to the Plaintiff's Interrogatory 24, it simply

---

[2] The Court applies this finding and overrules Plaintiff's untimely contention as to any of the discovery responses for which the issue was raised, including responses to Requests for Production 73, 81, 82, 86, 87-90, 95, 96, and 106 to Defendant Midwest and Requests for Production 66-68, 73, 74, 77-79, 85-88 to Defendant Lexington.

points out that the Defendant has previously provided the materials that are relevant and proportional to the needs of the case, as set out within the scope of relevance as defined under Fed.R.Civ.P. 26.

(*Id.*, at 6-7.) The Court agrees with Defendant that the list is not offered as a response to the discovery request at issue, but rather is a reference to proportional information that has previously been provided by Defendant. The Court also notes that Plaintiff does not address Defendant's explanation in her reply brief. (*See* Doc. 119, at 5-6.) The Court thus **overrules** Plaintiff's contention that Defendant stated an improper "subject to" objection to this discovery request.

Finally, Defendant Midwest contends that Plaintiff has not "demonstrate[d] the relevance of this request." (Doc. 114, at 7.) Plaintiff argues, however, that the objections are inapplicable because the discovery request was "posed to Midwest, who was responsible for terminating the Admins and DONs at the various facilities" and therefore involves "the same decision makers regarding all terminations." (Doc. 104, at 13.)

The Court finds Plaintiff's Interrogatory No. 24 to be relevant and proportional to the needs of the case as it seeks information regarding similarly situated employees who were terminated by the same decision-makers. This portion of Plaintiff's motion is **GRANTED**. Plaintiff's inquiry is, however, limited to the time frame of three years prior to her termination until the present.

## H. Interrogatory 25 to Midwest.

Interrogatory No. 25 asks Defendant Midwest to "[i]dentify the person(s) who requested Chitama Chitama's emails related to Plaintiff, state the date of the request, and explain the reasons why Chitama Chitama wrote handwritten notes on some emails."  (Doc. 104-3, at 7.)  Defendant responded to the Interrogatory by stating that

> [a]t this point it appears that the emails would have been requested by either Jenifer Sourk or Marie Vogel, and Chitama Chitama put the handwritten notes on to clarify his concerns and issues pertaining to the same.  It is believed that this was done shortly after the time of the Plaintiff's complaint to the KHRC, but an exact date is unknown.

(*Id.*)

Plaintiff contends that Defendant's Answer is not fully responsive to the Interrogatory because "either Defendant knows the information or it does not" and "[t]he Interrogatory is not asking Defendant to guess. …"  (Doc. 104, at 14.) Plaintiff points out that Sourk, Vogel, and Chitama Chitama all remain employed by Defendant, "so Defendant should be able to ask … them to obtain this answer." (*Id.*)

The Court agrees with Plaintiff.  Plaintiff's motion is **GRANTED** as to Interrogatory No. 25 and Defendant Midwest is ordered to provide a complete response to this Interrogatory that removes the offending qualifying language (*i.e.*

"[a]t this point it appears that the emails would have been requested," "[i]t is believed…").

## I.      Interrogatory 21 to Lexington.

Interrogatory No. 21 asks Defendant Lexington to "[i]dentify each person who has logged into any of Defendant's electronic systems … utilizing Plaintiffs log in information, and state the reason for and date of the log in."  (Doc. 104-2, at 4.)  Defendant responds that the "interrogatory cannot be answered as posed" because "[i]t is simply unknown to defendant if anyone ever logged in under Plaintiffs log in other than plaintiff."  (*Id*.)  Defendant did, however, provide Plaintiff with a list of log-ins.  (*Id*.)

Plaintiff contends that in her "golden rule" correspondence, she "inquired as to what search had been done to obtain the requested information" but Defendant failed to provide a response to this inquiry.  (Doc. 104, at 14.)  Plaintiff argues that "Defendant should not be permitted to simply say it is 'unknown' without conducting a search, which would include asking its employees."  (*Id*.)  The underlying Interrogatory does not, however, ask for additional information regarding what type of search was conducted and Plaintiff is not necessarily entitled to *sua sponte* expand a discovery request in subsequent correspondence.  The Court also notes that the only way for Defendant to compile an accurate answer to this question is to ask "all of its employees whether they logged into any

of the electronic systems through Plaintiff's log in information and ask[s] their IT Department to conduct a search regarding IP addresses."  (Doc. 119, at 7.)  The Court finds that this task would be unduly burdensome and disproportionate to the needs of the case.  The Court **DENIES** Plaintiff's motion as it relates to Interrogatory 21 to Lexington.

### J.  Request 68 to Midwest and 65 to Lexington.

These Requests ask Defendants Midwest and Lexington to "[p]roduce each email containing any patient name which any employee of Defendant has sent to a non-work email address."  (Doc. 104-4, at 3; Doc. 104-5, at 4.)  Defendant Lexington responds with an objection that the request is "temporally remote," irrelevant, and not proportional to the needs of the case because it "contains no time frame from which to formulate a search."  (Doc. 104-4, at 4.)  Defendant Lexington continues that the requests do not "contain proper search parameters," making it is impossible "to formulate a reasonable search" because Plaintiff has failed to define "what non-work email addresses are that are to be searched for." (*Id.*)

Defendant indicates that, to its knowledge, "no employee, other than plaintiff, has sent patient name and information to their own private email account from a facilities [sic] work email."  (*Id.*)  The answer of Defendant Midwest mirrors that of Defendant Lexington.  (*See* Doc. 104-5, at 4-5.)

In her "golden rule" correspondence, Plaintiff stated that "[t]here are many ways to formulate a reasonable search," including Defendants asking their employees for their personal email addresses. (Doc. 104-6, at 8.) Plaintiff contends that this would allow Defendants to search its email accounts using the provided email address to identify the emails sent to/from any of Defendants' email accounts. (*Id.*) According to Plaintiff, it would then "just be a matter of reviewing the emails for content." (*Id.*) Plaintiff also contends that Defendants could go through the "personnel records of [their] employees in which they have provided their personal email addresses, so that would be another way to obtain those." (Doc. 104, at 15.) Plaintiff "assumes Defendant's IT is also likely aware of how to search Defendant's email accounts to pull emails which were sent from an internal email account to an external email account." (*Id.*, at 16.) Plaintiff also points out that she has limited this search to the years 2012 through 2018. (*Id.*)

Plaintiff argues the requested information is "important" because Defendants are "now apparently asserting that a reason for Plaintiff's termination was that she sent an email containing patient names from her work email account to her personal email account." (*Id.*) According to Plaintiff, Defendants "should not be permitted to refuse to respond to the Request without even attempting to conduct a search." (*Id.*)

The Court finds that the manner in which Plaintiff proposes Defendants could compile this information to be unnecessarily complicated, unduly time consuming, and convoluted. Simply stated, Plaintiff's suggested solution clearly establishes that these requests are <u>not</u> proportional to the needs of the case.

Further, as to the relevance and importance of this information, Defendants argue that

> [i]t is irrelevant whether any employees, other than Plaintiff, has actually sent patient name and information to their own private email accounts from a facilities['] work email *if* the Defendant has no knowledge of that occurring. The Plaintiff would have to show that the Defendant knew of any other employee doing such, and then not terminating that employee. Defendants have provided that, to the knowledge of the Defendants, <u>no employee</u>, other than Plaintiff, has sent patient name and information to their own private email account from a facilities' work email. Therefore[,] this discovery request is irrelevant and unnecessary to the needs of this case.

(Doc. 114, at 9 (emphases in original).) The Court agrees with Defendants and **DENIES** Plaintiff's motion as to Request 68 to Midwest and 65 to Lexington.

### K.    Request 73 to Midwest and 68 to Lexington.

Requests 73 and 68 ask Defendants Midwest and Lexington to produce "all quality assurance reports for all facilities" during the relevant time period. (Doc. 104-5, at 6; Doc. 104-4, at 5.) Defendant Midwest objects that the requests are "so overly broad" as to become "irrelevant" because of the numerous facilities at issue (25 Assisted Living facilities, 8 Independent Living facilities, 8 Rehabilitation

facilities, and 8 Memory Care facilities in the State of Kansas). (Doc. 104-5, at 6.) Defendant Midwest further contends that "[e]ach facility is different with different levels of income and care serviced, and different staffing issues unique to each facility. (*Id.*)

Both Defendants contend that the Requests are "vague and ambiguous as it is unknown and undefined what plaintiff is seeking as a quality report" because Risk Watch, the quality assurance program used by Defendant utilized by defendant "does not issue any specific report but is rather a repository of information." (Doc. 104-4, at 5; Doc. 104-5, at 6.) Defendants contend that "[a]n individual may look up issues in Risk Watch which address certain aspects of care or incidents that occur," but that no specific "report" is sent or generated. (Doc. 104-4, at 5-6; Doc. 104-5, at 6.) According to Defendants, this makes it impossible to "answer the request as posed." (104-4, at 6; 104-5, at 6-7.)

Plaintiff argues that the objections are "inapplicable." (Doc. 104, at 17.) Plaintiff states that she used the term "quality assurance reports" because that term "has been used by Defendants in this lawsuit to refer to occurrence reports, which Ms. Marie Vogel specifically testified could be printed off and produced." (*Id.* (citation omitted).) Defendants respond that "despite any statements made by Ms. Marie Vogel, the Defendants do not have any specific quality assurance 'reports,' and therefore, cannot provide such." (Doc. 114, at 10.)

Plaintiff replies that Ms. Vogel refers to such reports as "Quality Assurance Audits." (Doc. 119, at 8 (citation omitted).) According to Plaintiff,

> [t]hese documents have been referenced and discussed numerous times throughout this litigation and seemed to be well known to Defendants' witnesses. These audits/reports apparently are used to audit the entire facility, in order to prepare for the annual surveys. [Citation omitted.] As such, these audits/reports would be an extremely useful way to compare the performance of the Directors of Nursing at the various facilities. If the other DONs engaged in the same or similar conduct as is alleged regarding Plaintiff's performance, yet those DONs were not terminated, this could be used as evidence to demonstrate pretext. Plaintiff requests the Defendants be required to produce the Requested documents.

(Doc. 119, at 8.)

The Court has previously held that a document request implicating all of Defendant's facilities "is facially overbroad and encompasses information relating to facilities that are entirely irrelevant to these proceedings." (*See* Doc. 70, at 26-27.) Regardless of whether the documents at issue are titled "quality assurance audits" or "quality assurance reports," Plaintiff has failed to establish how this information – from all of Defendant's facilities, regardless of care serviced or facility staffing issues – would be relevant and proportionate to the evaluation of any quality assurance with which Plaintiff is alleged to have failed to comply. Plaintiff's motion is therefore **DENIED** as to Request 73 to Midwest and Request 68 to Lexington.

**L.    Request 81 to Midwest.**

Request No. 81 asks Defendant Midwest to "[p]roduce the content of each

investigation (including falls, infection control, skin), which Chitama Chitama

assisted any facility complete in the year 2015." (Doc. 104-5, at 8.) Defendant

objected, in part, that the Request "has no bearing on the claims and defenses at

issue or plaintiff's failure to complete her reporting and as such the prospective

relevance of such materials requested is simply not proportional to the needs of the

case." (*Id.*, at 9.) Defendant continued that it would "attempt to locate" and

produce within ten days "such items but at this time, it is unknown what

information may be able to be located and produced." (*Id.*)

Plaintiff reiterates that Defendant's "subject to objection which, as stated

numerous times previously in this litigation, is improper in the District of Kansas."

(Doc. 104, at 18.) Federal Rule of Civil Procedure 34(b)(2)

> permits only three responses to a request for production
> of documents: produce the documents as requested,
> 'state an objection to the request' as a whole, or state an
> 'objection to part of [the] request' provided that the
> response specifies the part objected to and responds to
> the non-objectionable portion. 'Objecting but answering
> subject to the objection is not one of the allowed choices
> under the Federal Rules.'

*Sprint Communications*, 2014 WL 545544, at *3 (citation omitted). It is improper

for a party to respond to a discovery request with objections while indicating it will

provide responsive material anyway because such a response "is neither an objection, nor an adequate identification of the responsive documents." *C.T. v. Liberal School Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 294217, at *5 (D. Kan. Feb. 11, 2008).

Defendant argues that it did not respond to Request 81 as subject to objection. Rather, according to Defendant, it

> raised the objections within the Response, noting that a search would be conducted to locate any items, and if any were located, those items would be produced. However, no items have been produced, and the Defendant maintains that this objection is valid.

(Doc. 114, at 11.)

The Court does not agree with Defendant's characterization of this response. As quoted above, Defendant's response included specific objections as to Request 81, but then stated that Defendant would "attempt to locate" the requested documents. (Doc. 104-5, at 9.) Defendant continued that "[t]o the extent" the information could be "located," it would be produced within ten days, although it is "unknown what information may be able to be located and produced." (*Id.*)

As discussed in regard to Interrogatory 24, *supra*, this Court has specifically stated its disapproval of "conditional" discovery responses, such as occurs when "a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections." *See also Westlake v. BMO Harris Bank N.A.*,

No. 13-2300-CM-KGG, 2014 WL 1012669, *3 (D. Kan. March 17, 2014) (internal citation omitted); *Great Plains Ventures*, 2015 WL 4044977, at *2 (citation omitted).  The Court notes Defendant's response does not include the "subject to" or "without waiving" language.  The fact remains, however, that Defendant has specifically listed and explained the reasons it finds Plaintiff's request to be objectionable, but then indicates that it will provide responsive documents in the context of these objections.

Further, in its responsive brief, Defendant states that "no items have been produced, and the Defendant maintains that this objection is valid."  (Doc. 114, at 11.)  This is clearly improper and confusing.  Plaintiff has no way of knowing if no responsive documents exist or, on the other hand, if responsive documents exist but are being withheld subject to the objection.  *Sprint Communications*, 2014 WL 545544, at *2 (citation omitted).[3]  The Court instructs Defendant to respond to this request in accordance with Fed.R.Civ.P. 34.

---

[3] Defendant's response is distinguishable from its responses to Interrogatory 24 to Midwest, *supra*, and Request 82, infra, wherein Defendant referred Plaintiff to a prior, related document production after stating certain objections.  Those discovery responses were not made "subject to" or "without waiving" the stated objections.  Defendant merely directed Plaintiff to responses previously given, therefore there no confusion has been created as to whether documents to those requests are being withheld.  On the other hand, in response to Request 81, Defendant states that it will "attempt to locate such items" as are specifically responsive to Request 81.

That stated, the Court turns its analysis to Defendant's underlying objection that the request "has no bearing on the claims and defenses at issue or plaintiff's failure to complete her reporting and as such the prospective relevance of such materials requested is simply not proportional to the needs of the case." (Doc. 104-5, at 9.) Plaintiff argues that the information is "highly important to the needs of the case, as Plaintiff must be able to compare her conduct to the conduct of other directors of nursing at other facilities in order to determine if they were treated the same as her (*i.e.*, terminated) for the same or similar conduct." (Doc. 104, at 18.) Defendant responds that "[t]here is no delineation as to which type of facilities this is sought from, and requests documents from multiple facilities which have no bearing on the Plaintiff or her claims." (Doc. 114, at 12.) Plaintiff replies that

> Defendant's response regarding this request simply ignores the fact that this information is relevant to the issue of pretext in this case. As Defendant has failed to make any specific argument as to why this information would not be relevant to the issue of pretext, and because the information certainly is relevant to that issue, Plaintiff requests Defendant be required to conduct a diligent search for the requested information and produce the same.

(Doc. 119, at 9.)

The Court finds that Plaintiff has sufficiently established how this information is relevant to the claims and defenses in this case given the broad scope of discovery. Further, Defendant Midwest has failed to address whether the

information is relevant to the issue of pretext.  Defendant's objections are **overruled** and Plaintiff's motion is **GRANTED** as to Request No. 81.

### M.     Request 82 to Midwest.

Request 82 instructs Defendant Midwest to "[p]roduce the facility chart audits for each nursing/care facility completed by Chitama Chitama and/or Alice Noll for the Relevant Period."  (Doc. 104-5, at 9.)  Defendant objects that the request "has no bearing on the claims and defenses at issue or plaintiff's failure to complete her reporting and as such the prospective relevance of such materials requested is simply not proportional to the needs of the case."  (*Id.*)  Defendant also contends that the request implicates "multiple facilities which have no bearing on plaintiff or any of the claims that she failed to complete her reporting."  (*Id.*)  Defendant next objects that the "goes beyond the acceptable time period of 3 years prior to plaintiff's termination to 2 years after her termination."  (*Id.* (citation omitted).)

Defendant continues that

> requests regarding chart audits are problematic in that they may also be done with little or no documentation as it tends to be a nursing issue in which the regional nurses look at files to see if there is a problem and then will either directly talk to the facility people responsible or may provide a limited email.
> Defendant has already produced some documentation regarding chart audits at the Lexington Park Facility during plaintiff's tenure as DON and will

> supplement the same if additional documentation is
> located.

(Doc. 104-5, at 10.)

Plaintiff again complains that Defendant "has responded to this Request subject to objection which, as stated numerous times previously in this litigation, is improper in the District of Kansas." (*Id*.)  Defendant argues that it "did not respond to Request 82 as subject to objection." (Doc. 114, at 12.)  Rather, Defendant contends it "raised the objections within the Response, noting that a supplemental production to a previous, and related, request would be provided if additional documentation was located." (*Id*.)  The Court finds Defendant's explanation to be persuasive and notes that Plaintiff does not address this argument in her reply brief.  (See Doc. 119, at 9.)  As discussed in the preceding section, the Court also finds Defendant's response to this request to be distinguishable from its response to Request No. 81.  The Court thus **overrules** Plaintiff's contention that Defendant stated an improper "subject to" objection.

The analysis thus turns to the substance of Defendant's objection that the request is irrelevant and not proportional to the needs of the case.  Plaintiff contends that "this documentation is highly relevant to the needs of this case, as Plaintiff must be able to evaluate the performance of other facilities and directors of nursing versus her own, and the requisite disciplinary actions taken (or not taken) as a result of the same or similar conduct." (Doc. 104, at 19.)  Plaintiff

continues that "[o]ne of the only ways to do this is through comparing the chart audits, especially as the same regional nurses were completing them for all facilities." *Id*.

Defendant argues that "[t]here is no delineation to which type of facilities this is sought from, and requests documents from multiple facilities which have no bearing on the Plaintiff or her claims." (Doc. 114, at 13.) The Court has previously held that a document request implicating all of Defendant's facilities "is facially overbroad and encompasses information relating to facilities that are entirely irrelevant to these proceedings." (*See* Doc. 70, at 26-27.)

Plaintiff provides the following explanation as to why the information sought through Request 82 is relevant, if not necessary, to support her claims.

> Plaintiff must be able to compare the performance of her facility, and thus her performance as a DON, to that of the other facilities. One simple way to do that is by comparing the chart audits of the facilities. The same three regional nurses were completing the audits, and Ms. Vogel was supervising all of them. Thus, the facilities, and thus the DONs who are responsible for the facilities, are being reviewed by the same individuals, and are subject to the same policies and procedures of Defendant Midwest.

(Doc. 119, at 9.) Plaintiff failed to make this type of specific showing of need as to the information at issue in the Court's prior Order ("each annual state survey for all facilities located in the state of Kansas from January 2012 to the present" (Doc. 37-3, at 34)). Given the broad scope of discovery, Plaintiff has established the

relevance of the information sought by Request 82 and has adequately rebutted

Defendants' assertion that the information "from multiple facilities … [has] no

bearing on the Plaintiff or her claims."  (Doc. 114, at 13.)  As such, the Court

**overrules** Defendant's objections and **GRANTS** Plaintiff's motion as to Request

No. 82 to Defendant Midwest.  The relevant time frame for this request shall be

limited to three years before Plaintiff's termination until the present.

### N.     Request 86 to Midwest and 77 to Lexington.

Requests Nos. 86 and 77 ask Defendants Midwest and Lexington to

"[p]roduce all witness statements from any occurrence at Lexington Park for the

year 2015."  (Doc. 104-4, at 10.)  Defendants' responded that

> [w]itness statements are something contained with
> Riskwatch system.  Here the Court has already addressed
> the issues relating to Riskwatch in its rulings on the
> Motion to Compel (See Request No. 49 to Defendants
> Lexington and Midwest).  To that end, any witness
> statements which would have any bearing on issues in
> this case would have to be part of the record of what was
> completed and not completed under Riskwatch at the
> time of plaintiff's termination, and thus are already being
> handled in accordance with the Court's rulings on the
> Motion to Compel.  To the extent that plaintiff seeks
> witness statements outside of issues already addressed in
> the Motion to Compel, the prospective relevance of such
> materials is not proportional to the needs of the case as
> they will simply have nothing to do with this case or any
> claims therein.

(*Id.*, at 10-11.)

Plaintiff argues that Defendants are mischaracterizing the Court's Order on the prior motion to compel which, according to Plaintiff, "did not prohibit discovery of Riskwatch information."  (Doc. 104, at 20.)  "Further," according to Plaintiff, "this is a different Request than specifically address [sic] in the Motion to Compel.  Plaintiff is **asking for every witness statement**."  (*Id.* (emphasis added).)

This distinction, however, is why the Court finds Requests 86 and 77 to be objectionable.  These requests, as worded, facially encompass witness statements regarding "occurrences" that are thoroughly irrelevant to the claims and defenses of this case and, therefore, the request is not proportional to the needs of the case. The Court **sustains** Defendants' objections and **DENIES** Plaintiff's motion as to Requests Nos. 86 and 77.

### O.    Request 87 to Midwest.

The next request asks Defendant Midwest to "[p]roduce the emails containing weekly reports sent to Chitama Chitama and/or Alice Noll from any facility in the years 2014-2016."  (Doc. 104-5, at 12.)  Defendant objected that the "request as drafted has no bearing on the claims and defenses at issue or plaintiff's failure to complete her reporting" and, thus, is irrelevant and not proportional to the needs of the case.  (*Id.*)  Defendant continued that the request

> goes across multiple facilities which have no bearing on
> plaintiff or any of the claims that she failed to complete

> her reporting. However, the Court has already addressed
> the issues regarding the weekly reports in its rulings on the
> Motion to Compel (See Request No. 57 to Defendants
> Lexington and Midwest). In that ruling, the Court
> indicated that Defendant is to provide all such reports that
> exist for Lexington Park in accordance with the
> requirements of the motion to compel and it will do so.

(*Id.*)

Plaintiff contends the requested documents are "highly relevant in order for Plaintiff's performance to be evaluated against the performance of the other facilities' directors of nursing." (*Id.*) Plaintiff distinguishes the request at issue in the prior Motion to Compel as dealing with Plaintiff's "weekly reports" while the instant request deals with "the weekly reports received by Chitama Chitama or Alice Noll from any facility." (*Id.*)

Defendant responds that the request is facially overbroad and irrelevant because "[t]here is no delineation to which type of facilities this is sought from, and requests documents from multiple facilities which have no bearing on the Plaintiff or her claims." (Doc. 114, at 14-15.) Plaintiff's motion indicates that "[t]he requested documents are highly relevant in order for Plaintiff's performance to be evaluated against the performance of the other facilities' directors of nursing." (Doc. 104, at 21.) Her reply brief addresses this further, stating that requesting the weekly reports from the DONs of all facilities

> is another way for Plaintiff to compare her performance
> to similarly situated individuals to establish pretext. The

testimony in this case from Defendant's witnesses indicates that Defendant's position is that one of the alleged offense committed by Plaintiff was that she was not completing her weekly reports. Plaintiff must be able to compare this purported conduct to the conduct of the other DONs. Plaintiff requests Defendant be required to produce the requested information.

(Doc. 119, at 10.)

As discussed above, the Court has previously held that a document request implicating all of Defendant's facilities "is facially overbroad and encompasses information relating to facilities that are entirely irrelevant to these proceedings." (*See* Doc. 70, at 26-27.) The Court again finds, however, that Plaintiff has provided the Court with sufficient explanation – her need to compare her performance to similarly situated employees – to differentiate the breadth of Request 87 with that of the request at issue in the Court's prior Order.

Further, Defendant's response does not address Plaintiff's explanation of the relevance of the information other than to merely state that information "from multiple facilities [has] no bearing on the Plaintiff or her claims." (Doc. 114, at 15.) Defendant has failed to meet its burden in opposing the discovery request. ***Waters v. Union Pac. RR Co.***, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) (holding that once a party filing a motion to compel has established the "low burden of relevance…, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request")

(citing ***Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request bears the burden to support the objections)). As such, the Court **overrules** Defendant's objections and **GRANTS** Plaintiff's motion as to Request No. 87 to Defendant Midwest.

### P.    Request 88 to Midwest.

This Request seeks "the Risk Watch audits of each facility conducted by any regional nurse for the years 2014-2016." (Doc. 104-5, at 12.) Defendant Midwest objects that the request, as written, is disproportionate to the needs of the case and irrelevant to the claims and defenses at issue "or plaintiff's failure to complete her reporting." (*Id.*, at 12-13.) Defendant points out that the request encompasses "multiple facilities which have no bearing on plaintiff or any of the claims that she failed to complete her reporting, and cover outside facilities and even the time period beyond when plaintiff worked." (*Id.*, at 13.) Defendant indicates, however, that audits of Lexington Park performed during 2014 and 2015 have been previously produced. (*Id.*) Defendant also offered to supplement such audits within ten days of the filing of its response to Plaintiff's motion. (*Id.*)

Plaintiff argues that the requested documents "are highly relevant … in order for Plaintiff's performance to be evaluated against the performance of the other facilities' DONs." (Doc. 104, at 22.) Defendant, again, merely states that documents from "multiple facilities … have no bearing" on Plaintiff's claims.

(Doc. 114, at 15.)  As stated by Plaintiff, "Defendant fails to acknowledge that the Risk Watch audits are another way to compare the performance of the DONs at the various facilities."  (Doc. 119, at 10.)  According to Plaintiff,

> [t]hese audits are extremely relevant to the issues in this case, considering Defendant's focus on the RiskWatch system.  Plaintiff must be able to compare her performance to the other DONs and must be afforded the opportunity to demonstrate that the proffered reasoning for her termination was pretextual.  The same regional nurses were completing these RiskWatch audits for all of the facilities and Ms. Vogel was supervising all of them; thus, the DONs were similarly situated to Plaintiff.

(*Id.*)

Plaintiff has adequately explained that the requested are relevant to evaluating Plaintiff's performance as compared to against the performance of the other facilities' DONs.  (Doc. 104, at 22.)  Defendants failed to rebut – or even specifically address – Plaintiff's explanation.  The Court thus **overrules** Defendant Midwest's objections and **GRANTS** Plaintiff's motion as to Request No. 88.

### Q.     Request 89 to Midwest.

Request No. 89 asks Defendant Midwest to "[p]roduce the comprehensive chart audits of each facility conducted by any regional nurse for the years 2014-2016."  (Doc. 104-5, at 13.)  Defendant objects that the request, as written, is irrelevant and not proportionate to the needs of the case and "goes across multiple facilities which have no bearing on plaintiff or any of the claims that she failed to

complete her reporting, and cover outside facilities and even the time period beyond when [P]laintiff worked." (*Id.*) That stated, Defendant indicated that audits of Lexington Park performed in 2014 and 2015 were previously provided. (*Id.*)

For the reasons set forth above, the Court also **overrules** Defendant's objection that the information has "no bearing" on Plaintiff's claims. The Court finds that Plaintiff has adequately explained that the documents are "highly relevant … in order for Plaintiff's performance to be evaluated against the performance of the other facilities' DONs." (Doc. 104, at 23.) Further, Defendants makes no effort to rebut this explanation other than to generally contend that "documents from multiple facilities … have no bearing on the Plaintiff or her claims." (Doc. 114, at 16.) The Court **overrules** Defendant Midwest's objection and **GRANTS** Plaintiff's motion as to Request No. 89.

### R. Request 90 to Midwest.

This Request asks Defendant Midwest to "[p]roduce all correspondence and communications between the State of Kansas surveyors and Defendant for the Relevant Period." (Doc. 104-5, at 13.) Defendant objects that the request, as worded, is irrelevant to "the claims and defenses at issue or plaintiff's failure to complete her reporting" and not proportional to the needs of the case. (*Id.*, at 14.) Defendant continues that the request "goes across multiple facilities which have no

bearing on plaintiff or any of the claims that she failed to complete her reporting, and cover outside facilities, beyond when plaintiff worked." (*Id.*) Defendant also objects that the request should be temporally limited to 3 years prior to plaintiff's termination to 2 years after her termination. (*Id.*)

Finally, Defendant objects that the request is vague and ambiguous as to the definition of "surveyors." (*Id.*) Defendant contends that it "does not necessarily have any communication with the surveyors as they tend to do their job independent of the facility and without announcement of when they will be at a facility." (*Id.*) According to Defendant, "there tends to be no documentation with the surveyors during the period from 3 years prior to plaintiff's termination to 2 years after her termination," but Defendant offered to provide any supplemental documentation within 10 days of the filing of its response. (*Id.*, at 14-15.)

Plaintiff contends that the "subject to" nature of this objection is improper in the District of Kansas. (Doc. 104, at 24.) While the response does not use the "subject to" or "without waiving" language, Defendant has specifically listed and explained the reasons it finds Plaintiff's request to be objectionable, but then indicates that it will provide responsive documents "[t]o the extent such documentation is located," in the context of these objections. (Doc. 104-5, at 14-15.) Further, in their responsive brief, Defendants maintain that they "believe[s] the issues raised within the objection are valid and appropriate." (Doc. 114, at 17.)

The Court again notes the improper and confusing nature of such a response. Plaintiff has no way of knowing whether no responsive document exist or whether responsive documents exist but are being withheld subject to the objection. *Sprint Communications*, 2014 WL 545544, at *2 (citation omitted).

Defendant Midwest's response is distinguishable from its response to Request 82, *supra*, wherein Defendant referred Plaintiff to a prior, related document production and indicated it would supplement such prior production if additional documents were located. The response to Request 82 was not made "subject to" or "without waiving" the stated objections. Defendant merely directed Plaintiff to responses previously given. In response to Request 90, however, Defendant states that documentation responsive to this particular request will be provided if it is located. (Doc. 104-5, at 14-15.) As discussed *supra*, such a response is clearly not allowed under Federal Rule of Civil Procedure 34(b)(2). *See Sprint Communications*, 2014 WL 545544, at *3 (citation omitted).

The Court is also troubled by Defendant's language that it "does not necessarily" communicate with surveyors who "tend to" work independent of the facility. (Doc. 104-5, at 14.) According to Defendant, "there tends to be no documentation with the surveyors during the period from 3 years prior to plaintiff's termination to 2 years after her termination." (*Id*.) Plaintiff is not requesting information as to general rules or tendencies. She is seeking specific

communication between Defendant and State of Kansas Surveyors. (*Id.*, at 13.)

Either the information exists or it does not. The Court thus **GRANTS** this portion

of Plaintiff's motion and instructs Defendant Midwest to respond in accordance

with Fed.R.Civ.P. 34.

### S.    Requests 95 and 96 to Midwest.

Request No. 95 directs Defendant Midwest to "produce the documents

containing communications regarding or referring to the Lexington Park facility,

where the communications are between any regional nurse assigned to Lexington

Park in August, September, and October 2015 and any other person." (Doc. 104-5,

at 16.) Request No. 96 seeks the production of the documents "discussing or

referring to concerns about the Lexington Park facility from April 2015 through

December 2015." (*Id.*)

Defendant objects that the requests, as worded, are "overly broad … leading

to copious amounts of random communications over the period at issue." (*Id.*, at

16-17.) Thus, Defendant finds the request to be irrelevant and not proportional to

the needs of the case. (*Id.*) Given the context of the Court's order on a prior

motion to compel in this case, Defendant indicates it has

> already produced the documents relevant to plaintiff's
> employment and will verify that it is has produced all
> documents from any regional nurse assigned to
> Lexington Park relating to Plaintiff's employment, job
> performance, discipline, complaints or claims of
> disability discrimination and retaliation, and/or workers'

> compensation issues and make any supplements within
> ten (10) days.

(*Id*.)

Plaintiff again complains of the "subject to" nature of Defendant's objections. (Doc. 104, at 25, 26.) As discussed in the context of Defendant's response to Request 82, *supra*, this response was not made "subject to" or "without waiving" the stated objections. Rather, Defendant merely directed Plaintiff to responses previously given and offered to supplement the same. The Court **overrules** Plaintiff's "subject to" contention as to Requests 95 and 96.

Plaintiff contends Request No. 95 is "severely limited in time and scope" and, therefore, it "should be simple for Defendant to obtain this documentation by searching the email accounts of the three regional nurses for the time period of August-October 2015." (Doc. 104, at 25.) Plaintiff argues Requests 95 and 96 would encompass "communications regarding the documentation needing to be completed at the facility, the issues, if any, regarding documentation completion at the facility, and those matters which, while they do not specifically mention Plaintiff, would have high relevance to the issues in this case." (*Id*., at 25-26.)

The Court finds these requests, as worded, to be facially overbroad. To seek all communications to or from any regional nurse assigned to the Lexington Park facility that are in any way "regarding or referring to" that facility, as sought by Request 95, would clearly implicate documents that have nothing to do with the

claims or defenses in this case. The wording of Request No. 96 is even more troubling as it seeks any documents referencing "concerns" about the facility without defining what constitutes a "concern." Not only is this request facially overbroad, it is also facially vague and ambiguous as to what constitutes a "concern." Plaintiff's motion is **DENIED** as to Requests 95 and 96.

### T.    Requests 98, 104, and 105 to Midwest.

Request 98 seeks "documents discussing or referring to any plan, procedure, or steps taken to address or 'fix' any concerns or issues at Lexington Park after Plaintiff was no longer the DON at that facility." (Doc. 104-5, at 17.) Next, Request 104 directs Defendant Midwest to "[p]roduce the documents containing any communication of Chitama Chitama and any other person discussing Plaintiff transferring to Rolling Hills." (*Id.*, at 19.) Request 105 asks for "documents containing any communication of Alice Noll and any other person discussing Plaintiff transferring to Rolling Hills." (*Id.*) Defendant indicates that it "does not know of" any such documentation but will supplement the responses if any such information becomes known. (*Id.*, at 17, 19.)

In her "golden rule" correspondence, Plaintiff inquired as to what search was conducted for this documentation. (Doc. 104-6, at 13.) Plaintiff states that Defendants did not respond to this inquiry. (Doc. 104, at 27.) Plaintiff further contends that there have been "numerous instances in this case where it has been

indicated that Defendant has not conducted a search or has not conducted a

reasonable search" and, thus, asks the Court to compel Defendant to "conduct a

full search for the requested information and fully respond to the Request." (*Id*.)

In their responsive brief, Defendants merely state that the responses to these

three requests "are responsive to the requests as to the best of Midwest's abilities.

No such documentation is known to exist." (Doc. 114, at 20.) Pursuant to

Fed.R.Civ.P. Rule 26(g)(1), every discovery request, response or objection must be

signed by at least one attorney of record. By signing, the attorney "certifies that to

the best of the person's knowledge, information, and belief formed after a

reasonable inquiry," the discovery response or objection is "consistent with these

rules and warranted by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law, or for establishing new law," the response or

objection is "not interposed for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation," and that the

response or objection is "neither unreasonable nor unduly burdensome …

considering the needs of the case, prior discovery in the case, the amount in

controversy, and the importance of the issues at stake in the action." Fed.R.Civ.P.

Rule 26(g)(1)(B)(i-iii).

Given the certification associated with counsel's signature on the discovery

responses at issue, the Court thus finds it unnecessary to require Defendants to

provide a description of the search they conducted, particularly when such information was not sought in the initial discovery request. Simply stated, defense counsel has attested that no responsive documents exist and this is sufficient. Plaintiff's motion is **DENIED** as to Requests 98, 104, and 105.

### U.    Request 106 to Midwest.

Request No. 106 asks Defendant Midwest to "[p]roduce the documents containing any disciplinary actions of any employee of Defendant or of any facility regarding personal cell phone and/or laptop and/or email usage." (Doc. 104-5, at 19.) Defendant objected that the request contains no temporal limitation "and thus becomes so temporally remote as to become irrelevant and not proportional to the needs of the case." (*Id.*) Defendant continues that the request is overly broad and vague because it has not been limited to any particular facility or facilities managed by Defendant and "would require [D]efendant to go back and review issues concerning its contracts with 25 Assisted Living facilities, 8 Independent Living facilities, 8 Rehabilitation facilities, and 8 Memory Care facilities in the State of Kansas since the inception of each relationship." (*Id.*) Defendant further objects that the request is so broadly worded as to be irrelevant to the defense of after-acquired evidence and the allegation that Plaintiff "sent work emails containing protected information to her personal email account which was unprotected." (*Id.*)

Plaintiff contends that the request is sufficiently related to the after-acquired evidence issue. (Doc. 104, at 28.) She argues that she "should be able to receive this information to compare those disciplinary actions with Defendant's newly purported reason for termination" and contends that any security concerns regarding the use of a personal email account "would be the same concerns regarding use of a personal cell phone, or laptop." (*Id*.)

As discussed *supra*, the Court has previously held that a document request implicating all of Defendant's facilities "is facially overbroad and encompasses information relating to facilities that are entirely irrelevant to these proceedings." (*See* Doc. 70, at 26-27.) As to Request 106, however, Plaintiff has provided a sufficient explanation as to why the information sought is relevant to her claims – to compare disciplinary actions taken by Defendant as to other employees who acted in a similar manner in the context of Defendant's "newly purported reason" for Plaintiff's termination. (Doc. 104, at 28.) Plaintiff failed to make this type of specific showing of need as to the information at issue in the Court's prior Order.

Further, although Plaintiff is alleged to have created a security concern by the use of a personal email account, the Court agrees that such a concern would "be the same … regarding use of a personal cell phone, or laptop." (*Id*., at 28-29.) Defendants merely respond that "documents from multiple facilities [would] have no bearing on the Plaintiff or her claims." Defendants have failed to meet their

legal burden to oppose the discovery request. *Waters*, 2016 WL 3405173, at *1 (citation omitted). The Court thus overrules Defendant's objections and **GRANTS** Plaintiff's motion as to Request 106 to Defendant Midwest. The document request is, however, limited to disciplinary action related to security concerns caused by the use of personal cell phone and/or laptop and/or email usage. The request is further limited to the time frame of three years before Plaintiff's termination until the present.

## V.     Request 66 to Lexington.

This Request asks Defendant Lexington to "[p]roduce each text message any employee of Defendant has sent containing patient names." (Doc. 104-4, at 4.) Defendant objects that the request, as written, "contains no time frame from which to formulate a search and thus becomes so temporally remote as to become irrelevant and not proportional to the needs of the case." (*Id*.) Defendant also contends that that it "does [not] have the ability to electronically locate or search text messages as text messages come from private phones" and "[t]here is no reasonable way to determine this, much less to determine this for the entirety of the existence of the defendant and going back to try to search former employees." (*Id*.)

Defendant continues that Plaintiff is alleged to have sent emails from her secured work email to her private unsecured email address is at issue in this case.

(*Id*.)  Thus, according to Defendant, the issue of texting is irrelevant and not proportional to the needs of the case.  (*Id*.)  Plaintiff argues that "there are many ways to formulate a reasonable search to this Request," including having Defendant "ask its employees for the text messages."  (Doc. 104, at 29.)

The Court finds Plaintiff's request to clearly be beyond the scope of the issues in this case.  Even assuming the information was relevant to the issues in this lawsuit, the difficulty Defendant would encounter in compiling this information makes the request disproportional to the needs of this case.  Further, the lack of a temporal limitation makes this request facially overbroad.  Defendant Lexington's objections are **sustained** and the Court **DENIES** this portion of Plaintiff's motion.

### W.    Request 67 to Lexington.

Request No. 67 directs Defendant Lexington to "[p]roduce each email containing any patient name which any employee of Defendant has sent or received from a cell phone, including each email which includes the language 'sent from my iPhone' or any other language stating the email was sent through a cell phone." (Doc. 104-4, at 5.)  Defendant objects that the request is temporally overly broad because it contains to limiting time frame, making the information sought irrelevant and disproportionate to the needs of the case.  (*Id*.)  Defendant

continues that "[w]ithout proper search parameters, there is no way in which to formulate a records search to obtain such information."  (*Id*.)

Defendant also argues that it has been asserted that Plaintiff sent emails from her secured work email to her private unsecured email address, not the sending emails from a cell phone.  (*Id.*)  As such, according to Defendant, the inquiry is irrelevant and not proportional to the needs of the case.  (*Id.*)

Plaintiff addressed the proportionality objection in her "golden rule" letter to Defendant by contending that Defendant conduct a search using the term "sent from my iphone" and similar language for other phones.  (Doc. 104, at 31; Doc. 104-6.)  Plaintiff also agreed to limit the search from 2012-2018.  (*Id.*)  Defendant did not agree to these restrictions.

The Court finds the breadth of Plaintiff's request to go beyond the scope of the issues in this case.  Further, even assuming the information was relevant to the issues in this lawsuit, the difficulty Defendant would encounter in compiling this information makes the request clearly disproportionate to the needs of this case.  Defendant Lexington's objections are **sustained** and the Court **DENIES** this portion of Plaintiff's motion.

### X.       Requests 73, 74, 78, 86, 87, 88 to Lexington.

Requests 73, 74, and 78 seek "an exact electronic copy" of the Risk Watch system, the Vision system, and the Health Med X system, "including all records

and reports, for the years 2012-2015, including any electronically stored data or paper document." (Doc. 104-4, at 7-9, 11.) This is to include any "active" files, electronic backup files, "deleted" but recoverable electronic files, "electronic file fragments (files that have been deleted and partially overwritten with new data)," and slack fragments "(data fragments stored randomly from random access memory [RAM] on a hard drive during the normal operation of a computer [file slack and or RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data)." (*Id.*)

Defendant Lexington objects that the Requests are facially overly broad and not proportional to the needs of the case as they seek this information for "a 90+ bed facility over a three year period." (*Id.*, at 8, 9, 11.) Defendant also complains that the requests implicate private health information with "absolutely no bearing on any issues concerning Plaintiff's failure to complete reports and document incidents." (Id., at 9, 11.)

The Court notes that the production of private or confidential information is not, in and of itself, a valid reason to withhold discovery as the production could governed by a protective order. ***High Point SARL v. Sprint Nextel Corp.***, No. 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011). "'A concern for protecting confidentiality does not equate to privilege.'" *Id.* (citation omitted).

That stated, Requests Nos. 73, 74, and 78, as worded, are facially overbroad and disproportionate to the needs of the case. The Court notes that Defendant has explained to Plaintiff that "the computer software programs do not function in the way that Plaintiff s counsel believes possible" and the requested "searches are simply not possible to run." (Doc. 114, at 26.) Defendant Lexington's objections are **sustained** and Plaintiff's motion is **DENIED** as to Requests 73, 74, and 78.

Defendant also argues that, in addressing the prior motion to compel filed in this case relating to the Risk Watch system,

> the Court indicated that if there is any way for [D]efendants to locate the records pertaining to what [P]laintiff completed and what she had not at the time of her termination, this is to be extracted from the system, and the defendant is ordered to do so by December 19, 2018. As the issues in this litigation concern [P]laintiff's level of completion of such reports and whether there were outstanding reports at the time of her termination, this would appear to be already handled under the Order issued by the Court, done subsequent to the issuance of these requests. For this reason the production of the entire Riskwatch system from 3 years prior to [P]laintiff's termination to 2 years after her termination … would not only be duplicative of any information to be produced under the Motion to Compel, it would simply fail to provide any further information concerning the records at issue, and for which [P]laintiff's employment was terminated for [sic].

(*Id.*, at 7-8; *see also id.*, at 11-12.) The Court agrees with this assessment.

Defendant Lexington was also directed to produce "the entire electronic medical record for each patient of Defendant" (Request No. 86), "the entire Risk

Watch record for each patient of Defendant" (Request No. 87), and "all records for each patient of Defendant" (Request No. 88) from 2012 to 2015. (*Id*., at 15-17.) Defendant objected that these requests are overly broad, not proportional to the needs of the case, and implicate private health information with "absolutely no bearing on any issues concerning Plaintiff's failure to complete reports and document incidents." (*Id*., at 16.)

Again, the private or confidential nature of requested information is not a valid reason to deny a discovery request. ***High Point SARL***, 2011 WL 4008009, at *2. That stated, Requests Nos. 86, 87, and 88, as worded, are facially overbroad and blatantly disproportionate to the needs of the case as they would implicate countless documents relating to every patient of Defendant for a period of three years with no limitation as to how the information might possibly relate to Plaintiff or her claims in this case. The Court also notes defense counsel's assertion the requested "searches are simply not possible to run." (Doc. 114, at 26.)

Plaintiff replies that she has "thoroughly and methodically considered Defendant's various positions" as to Requests 73, 74, 78, 86, 87, and 88 and has "determined that a simple solution would be to simply request the production of each electronic system's records, so that Plaintiff can review the information." (Doc. 119, at 14.) Plaintiff contends that this is appropriate because "[c]ertainly, this information is likely to lead to the discovery of admissible evidence." *Id*. This

"solution" proposed by Plaintiff – just produce all of the documents because surely there is some information likely to lead to the discovery of admissible evidence – is the very definition of a fishing expedition. Further, "likely to lead to the discovery of admissible evidence" is no longer the standard for discovery in federal courts. Rather, the standard was revised nearly four years ago pursuant to the December 1, 2015, amendments to Fed.R.Civ.P. 26. Defendant Lexington's objections are **sustained** and Plaintiff's motion is **DENIED** as to Requests 73, 74, 86, 87, and 88 to Lexington.

**Y.    Request 79 to Lexington.**

This Request seeks "reports of the 'resident at risk' meetings conducted at Lexington Park in the years 2012-2015." (Doc. 104-4, at 12.) Defendant Lexington responded that it "does not have 'reports of 'resident at risk' meetings" sought by Plaintiff. (*Id.*) According to Defendant,

> [t]here is testing done on residents as part of the initial intake and whenever there is an incident or occurrence that would indicate some risk or harm to the resident. Based upon the testing and what appears to be the issue that resulted in the incident, a plan is implemented to deal with the needs of the resident and to ensure that risk is minimalized. Most often there is a meeting to discuss the plan to be put in place but there is not any independent report that emanates from the meeting. To that end, there are no documents that specifically comply with the request. However, to the extent that a resident at risk is discussed in the weekly reports see response to Request No. 80.

(*Id.*)

Plaintiff contends that Defendant's response "makes Plaintiff wonder whether Defendant's employees even reviewed these Requests or whether a diligent search was conducted" because "there has been testimony in this case that there were weekly 'resident at risk' (RAR) meetings at Lexington Park." (Doc. 104, at 34 (citation omitted).)

> It was indicated that the RAR reports were included in email, and also in the clinical records. From the Response, it seems clear the author did not even know what was being referred to, which is troubling. In her April 5th correspondence (Exhibit F), Plaintiff indicated these concerns and asked Defendant to please conduct an actual search for these documents and produce them. Defendant did not indicate that it had done so. Plaintiff requests the Court therefore order that Plaintiff be entitled to the information requested through these Requests, so she can conduct her own search.

(*Id.* (citation omitted).)

Because the cited deposition testimony has not been submitted as an exhibit, the Court cannot determine if Plaintiff is characterizing it correctly. That stated, Defendant's brief in opposition ignores this issue entirely and merely states that the "[r]esponse to Request 79 is responsive to the question as written" and that the "answer fully and directly addresses the Request." (Doc. 114, at 28.) Defendant makes no effort to respond to Plaintiff's assertion regarding testimony of weekly "resident at risk" (RAR) meetings at Lexington Park.

The Court therefore directs Defendant to provide a supplemental response that addresses Plaintiff's characterization of the cited deposition testimony.  If the testimony indeed indicates that such "resident at risk" meetings occurred at Lexington Park, Defendant is instructed to produce the same for the years requested by Plaintiff.  While the Court has some concerns as to the breadth and proportionality of the information requested, Defendant Lexington has not raised these objections.  Plaintiff's motion is, therefore, **GRANTED** as to Request 79 to Lexington.

### Z.     Request 85 to Lexington.

This Request seeks production of "documentation of each instance of coaching or discipline Plaintiff issued to any employee while she was the Director of Nursing at Lexington Park."  (Doc. 104-4, at 15.)  Defendant Lexington objects that the request is irrelevant and not proportional to the needs of the case because it is unaware "of any issues in the case for the [P]laintiff or the [D]efendants that deal with [P]laintiff meting out discipline or counseling to employees." (*Id.*)  Defendant also objects that the request is vague and ambiguous because the term "counseling" is undefined, "whether this is a discussion in passing between [P]laintiff and an employee or some specific issue that [P]laintiff wanted an employee to formally address."  (*Id.*)  Defendant contends that Plaintiff "would be in a better position to

indicate whom she counseled and to what purpose, whereas Defendant can only provide the documented discipline that [she] issued and only after having to search the independent employee files for a period of three years to determine if [P]laintiff issued some discipline to an employee." (*Id.*)

Plaintiff contends that there "have been numerous assertions in this lawsuit that Plaintiff failed to properly discipline and manage her own staff, thus leading to the purported negative performance of the Lexington Park facility," thus making it "important to review the coaching and discipline she issued while she was DON." (Doc. 104, at 35.) Plaintiff argues that this information "relates to Plaintiff's employment, thus has been compelled be produced already." (*Id.*)

While Plaintiff generally contends there have been assertions that she failed to properly discipline and manage her staff, she has not actually identified when, by whom, and/or in what context such assertions were allegedly made. Defendants, on the other hand, specifically attest that they are unaware "of any issues in the case for the [P]laintiff or the [D]efendants that deal with [P]laintiff meting out discipline or counseling to employees." (*Id.*) Given Defendants' attestation, Plaintiff has failed to meet her burden to show that this request is facially relevant. As such, Defendant's objection is **sustained** and the Court **DENIES** Plaintiff's motion as to Request 85 to Defendant Lexington.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 104) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

All supplemental responses, including responsive documents, shall be served by Defendants **within thirty (30) days** of the date of this Order.

IT IS SO ORDERED.

Dated this 12th day of July, 2018, at Wichita, Kansas.

 s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE